IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL A. RIVERA                          :
                                           :       CIVIL ACTION
              v.                           :
                                           :       NO.  15-5609
CHESTER COUNTY, et al.                     :

O'NEILL, J.                                                 March 28, 2017

## MEMORANDUM

The present action involves a pro se complaint filed against more than sixty defendants by plaintiff Michael A. Rivera.  Plaintiff's claims arise out of a lengthy string of events beginning with his initial arrest and continuing through his subsequent and continuing incarceration.  Four groups, which encompass all of the named defendants, each filed a motion to dismiss.  Upon consideration of these motions and plaintiff's joint response, I will grant the motions in part and deny them in part.

## FACTUAL BACKGROUND

Plaintiff initiated this action on February 16, 2016 against multiple corrections officers, the Chester County Prison warden, the prison's food and medical director, several random prison employees, Chester County municipality, PrimeCare Medical, Inc., prison medical staff, the East Vincent Township Police Department, New Garden Township Police Department, the Chester County Detectives Office and individual Chester County Detectives.   His amended complaint sets forth a litany of constitutional violations under the First, Eighth and Fourteenth Amendments resulting from events beginning with an arrest in 2014 and continuing through July 2015 during his incarceration.  The allegations, which consume over 150 paragraphs in the amended complaint and another sixteen pages of what appears to be a memorandum of support for his

claims, cover a wide variety of subjects including excessive force, deliberate indifference to a

serious medical need, deprivation of access to the law library, inhumane conditions of

confinement, equal protection violations and denial of access to the grievance system.

I originally dismissed plaintiff's complaint without prejudice under 28 U.S.C. § 1915A

for failure to state a claim upon which relief may be granted.  In doing so, I gave plaintiff explicit

instructions for filing an amended complaint.  Specifically, I directed that:

> 1.      The amended complaint must be filed within thirty days
> from the date of this memorandum and order.
>
> 2.      The amended complaint must recite factual allegations
> which are sufficient to raise plaintiff's claimed right to relief above
> the level of mere speculation.
>
> 3.      The amended complaint must contain "a short and plain
> statement of the claim showing that the pleader is entitled to relief"
> and set forth allegations that are "simple, concise, and direct."
>
> 4.      The amended complaint must describe plaintiff's causes of
> action in separately numbered paragraphs for each incident about
> which plaintiff alleges a claim.  The allegations must clearly
> identify the time, place, conduct and name of the person
> responsible for the offending acts.
>
> 5.      The amended complaint must be a new pleading which
> stands by itself as an adequate complaint without reference to any
> other pleading already filed.
>
> 6.      The amended complaint must be legible and should be
> either handwritten in blue or black ink with proper margins, or
> typewritten.

Mem. & Order, ECF No. 87, Sept. 19, 2016.

On November 2, 2016, plaintiff filed a sixteen-page amended complaint consisting of

more than 150 numbered paragraphs.  These paragraphs follow the same general format by

listing in chronological order the type of violation (e.g., Eighth Amendment, Fourteenth

Amendment), the defendant against whom the violation is stated (e.g., Officer Matthew

Williams, PrimeCare), the date and a cursory basis for the claim (e.g., for giving plaintiff involuntary medications, for denying plaintiff basic hygiene/showers, for using excessive force without cause).  In addition, plaintiff attaches another document that, like his previous complaint, gives a sixteen-page, single-spaced, run-on narrative of the various events underlying his claims. The document, which I shall refer to as the "complaint memorandum," provides factual allegations to support each cause of action.

On November 16, 2016, defendants PrimeCare Medical, Inc., Staci Suzuki, Psy.D., John P. Fraunces, Ed.D., Karen Murphy, RN, CCHP, Molly Longare, PA-C., Megan Hughes, PA-C, Briana Culp, PA-C, Corey Cotton, LPN, Mabel Moiyallah, MA and Nurse Lisa (collectively, the "medical defendants") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 91.  On the same day, a similar motion was filed by defendants County of Chester, Cpl. Michael Marconi, Correctional Officer (CO) Troy Daniels, Sgt. Yaroslav Yancik, CO Wilson, CO Valerie McCormack, CO Joseph Moore, Cpl. Preston Whitesell, Cpl. Jose Garcia, Lt. P. Steve Sergi, Lt. David Ham, Lt. Edson Forbes, Capt. Morgan Taylor, Warden D. Edward McFadden, Capt. Harry Griswold, Lt. Robert Mastnjak, Sgt. Donald Muller, Sgt. Golden English, CO Randy Little, CO Kenneth Klinger, CO David Haines, Capt. Ocie Miller, Capt. Pamela Saunders, Capt. Gene Farina, Major D. Scott Graham, CO Powers, Deputy Warden Walter Reed, Counselor Jorge Vazquez, CO Weed, Corporal Ca'role White, Lt. James Brooks, Sgt. Michael Young, Sgt. Arnold Lynch, CO Raymond Riggins (and/or Riggens), CO (CEU) Tear, Director of Treatment Services Jack Healy, Corporal James Svah, CO Jesus Ruiz, CO Domonique Bemberry, CO Wesley Suydum, CO Weed, Officer Stevenson, Work Supervisor Robert Francis, Chester County Detectives Office, Detective Robert Balcunis, Detective David Grandizio and Detective Ken Beam (collectively, the "Chester County defendants").  Dkt. No.

90.  Defendants New Garden Township PD and Officer Matthew Jones filed a Rule 12(b)(6)

motion to dismiss on November 17, 2016, Dkt. No. 92, and Defendants East Vincent Township

PD and Chief Matthew Williams filed a motion to dismiss on February 7, 2017.  Dkt. No. 95.

On February 13, 2017, plaintiff responded to all four motions.  Dkt. No. 98.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of

demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R.

Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  The United

States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice" and  "only a complaint that

states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct.  Id.

The Court of Appeals has detailed a three-step process to determine whether a complaint

meets the pleadings standard.  Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014).  First, the court

outlines the elements a plaintiff must plead to state a claim for relief.  Id. at 365.  Next, the court

must "peel away those allegations that are no more than conclusions and thus not entitled to the

assumption of truth."  Id.  Finally, the court "look[s] for well-pled factual allegations, assume[s]

their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to

relief.'" Id., quoting Iqbal, 556 U.S. at 679.  The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id., quoting Iqbal, 556 U.S. at 679.

A prisoner's pro se complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." United States ex rel. Walker v. Fayette Cnty., Pa., 599 F.2d 573, 575 (3d Cir. 1979), citing Haines v. Kerner, 404 U.S. 519, 521 (1972).  The court must construe the facts stated in the complaint liberally in favor of the plaintiff. Haines, 404 U.S. at 520.  "Yet there are limits to our procedural flexibility.  For example, pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).  Thus, even a pro se complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that are devoid of "factual enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

## DISCUSSION

### I.     Compliance with 28 U.S.C. § 1915A

As noted above, I originally dismissed plaintiff's complaint without prejudice under 28 U.S.C. § 1915A, which requires that I conduct a preliminary review of any pro se complaint seeking redress against government officials.  Section 1915A provides, in pertinent part:

> **(a) Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.  This standard mirrors the standard for addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  <u>Schreane v. Seana</u>, 506 F. App'x 120, 122 (3d Cir. 2012).

Plaintiff's amended complaint does not fully comply with my previous instructions. Most notably, the amended complaint does not stand alone as an adequate pleading, but rather relies on the attached "complaint memorandum."  Moreover, rather than dividing his claims into categories, the complaint memorandum provides a stream-of-consciousness type discussion of the operative facts.  Given these failures, I would be justified in again dismissing the complaint with or without prejudice to leave to amend pursuant to § 1915.

Nonetheless, I decline to do so for two reasons.  First, as plaintiff has already been given detailed directions on pleading, allowing leave to amend again would likely not result in a significantly improved complaint.  More importantly, plaintiff's complaint memorandum, which is similar to his initial complaint, provides more detailed factual allegations in support of the causes of action set forth in his amended complaint.  His actual amended complaint then provides cross-references between each of his separately-numbered claims and the pertinent section in the complaint memorandum.  Taking these two documents together, I find that plaintiff can survive § 1915 screening.

Defendants have now filed a second round of motions to dismiss that specifically address the merits of plaintiff's underlying claims.  Plaintiff, in turn, has substantively responded to

defendants' motions.   Reading plaintiff's complaint and response in the most liberal fashion and drawing all plausible inferences in favor of plaintiff's claims, I will now address the substance of the claims in the amended complaint.

## II.     Motion to Dismiss by Defendants New Garden Township Police Department and Officer Matthew Jones

Defendants New Garden Township Police Department and Officer Matthew Jones seek dismissal of all claims against them.   For the following reasons, I will grant their motion in part and deny it in part.

### A.     New Garden Township Police Department

Plaintiff does not provide any factual allegations or legal claims against New Garden Police Department.   Assuming plaintiff meant to impose liability against New Garden Police Department based on the acts of its employees, this claim must fail for two reasons.

First, "[i]n Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."  DeBellis v. Kulp, 166 F. Supp. 2d 255, 265 (E.D. Pa. 2001).   Thus, a police department "is not a 'person' subject to suit in a § 1983 civil rights action because it lacks an identity separate from the municipality of which it is a part." Draper v. Darby Twp. Police Dep't., 777 F. Supp. 2d 850, 856 (E.D. Pa. 2011); see also Briggs v. Moore, 251 F. App'x 77, 79 (3d Cir. 2007) (affirming the dismissal of a Section 1983 suit against the Monmouth County District Attorney's Office because it "is not a separate entity that can be sued under § 1983"); Reitz v. Cnty. of Bucks, 125 F.3d 139, 148 (3d Cir. 1997) (affirming district court's entry of summary judgment in favor of the Bucks County District Attorney's Office because it "is not an entity for purposes of § 1983 liability").   Under this well-established jurisprudence, New Garden Township Police Department is not a proper party to this litigation.

7

Second, even to the extent New Garden Township could be properly substituted for New Garden Police Department, plaintiff's claims, which are premised on 42 U.S.C. § 1983, fail to state cognizable constitutional violations.  In the seminal case of Monell v. Department of Social Services, 436 U.S. 658 (1978), the United States Supreme Court confirmed that "Congress *did* intend municipalities and other local government units to be included among those persons to whom §1983 applies," but emphasized that, "a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Id. at 690–91 (emphasis in original).  Instead, "[a] local government may be sued under § 1983 only for acts implementing an official policy, practice or custom."  Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 910 (3d Cir. 1984), citing Monell, 436 U.S. at 690–91; see also Mulholland v. Gov't Cnty. of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013), citing Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

Guided by such principles, the Court of Appeals has explained that there are three situations where the acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, rendering the entity liable under § 1983:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotation marks and citations omitted).

The amended complaint is devoid of any allegations of any policy, practice or custom within New Garden Township that caused the purported constitutional violations. Because a municipality cannot be held liable simply on a respondeat superior basis for the acts of its employees, I must dismiss this claim.

### B.      Officer Matthew Jones

Plaintiff also sets forth an Eighth Amendment claim of excessive force against Officer Matthew Jones. Am. Compl. ¶ 2. Plaintiff asserts that during the course of his arrest on December 23, 2014, Officer Jones slammed him to the floor when he was not resisting and punched him in the back of the head. Compl. Mem.,[1] p.1, lines 2–4. These actions left plaintiff with bruising, swelling, a cast on his finger, cuts on his left check and stitches. Id. at p. 1, lines 9–11. Defendants now argue that plaintiff's claim must be dismissed because (1) the Eighth Amendment is inapplicable to plaintiff; (2) the claim fails to set forth a constitutional violation and (3) Officer Jones is protected by qualified immunity.

### 1.      Applicability of the Eighth Amendment

Defendants' first argument is premised on the fact that plaintiff asserts his excessive force claim under the Eighth Amendment, which applies only to convicted prisoners. Natale, 318 F.3d at 581. As plaintiff admits that Officer Jones's actions occurred during his arrest of plaintiff, not while plaintiff was incarcerated, the Eighth Amendment provides no protection. As set forth above, however, I must construe plaintiff's claims liberally given his status as a pro se litigant. Haines, 404 U.S. at 520; see also Wilson v. Sobina, No. 11-298, 2012 WL 6840521, at *2 (W.D. Pa. July 16, 2012) ("If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority,

---

[1]      For purposes of citation, I refer to plaintiff's complaint memorandum attached to his amended complaint as "Compl. Mem."

confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity

with pleading requirements."). Doing so, I will assume that plaintiff meant to plead this claim

under the Fourth and Fourteenth Amendments, which prohibits the use of unreasonably

excessive force when making an arrest. Graham v. Connor, 490 U.S. 386, 394 (1989).

### 2. Failure to Plead a Constitutional Violation

I also reject defendants' second argument—that plaintiff fails to adequately plead a

constitutional violation. The Supreme Court has stated that the "use of force is contrary to the

Fourth Amendment if it is excessive under objective standards of reasonableness." Saucier v.

Katz, 533 U.S. 194, 202 (2001). In making this determination, the court must evaluate the

reasonableness of "a particular use of force . . . from the perspective of a reasonable officer on

the scene, rather than with the 20/20 vision of hindsight," while recognizing "that police officers

are often forced to make split-second judgments—in circumstances that are tense, uncertain, and

rapidly evolving—about the amount of force that is necessary." Graham, 490 U.S. at 396–97. As

the United States Supreme Court has held:

> [T]he "reasonableness" inquiry in an excessive force case is an
> objective one: the question is whether the officer['s] actions are
> "objectively reasonable" in light of the facts and circumstances
> confronting [him], without regard to [his] underlying intent or
> motivation . . . . An officer's evil intentions will not make a Fourth
> Amendment violation out of an objectively reasonable use of
> force; nor will an officer's good intentions make an objectively
> unreasonable use of force constitutional.

Id. at 397 (internal citations omitted). Careful attention must be given to the facts and

circumstances of each particular case, recognizing that the use of some coercion necessarily

inheres in the officer's right to make such an investigatory stop or seizure. Id. at 396. These

facts and circumstances include "the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

or attempting to evade arrest by flight." Id. Our Court of Appeals has included additional

factors for consideration, such as "the duration of the action, whether the action takes place in the

context of effecting an arrest, the possibility that the suspect may be armed, and the number of

persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d

810, 822 (3d Cir. 1997), abrogated on other grounds by Curley v. Klem, 499 F.3d 199 (3d Cir.

2007).

As stated above, plaintiff alleges that during the course of plaintiff's arrest, Officer Jones

slammed him to the floor and punched him in the back of the head, even though plaintiff was not

resisting. Taken as true, such allegations could plausibly rise to the level of excessive force

prohibited by the Constitution. Therefore, I will not dismiss this cause of action for failure to

state a claim.[2]

### 3. Qualified Immunity

Finally, defendants argue that if the excessive force claim survives, Officer Jones is

entitled to qualified immunity. Qualified immunity provides that government officials are

immune from suits for civil damages under 42 U.S.C. § 1983 "insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." Messerschmidt v. Millender, 565 U.S. 535, 546 (2012) (quotations omitted). This

doctrine attempts to balance the competing values of protecting innocent individuals from

litigation while allowing liability for those who abuse their discretion. Harlow v. Fitzgerald, 457

U.S. 800, 813–14 (1982). The qualified immunity analysis is specific to each individual

---

[2]     Defendants contend that Williams was arresting plaintiff for murdering his mother and burning her apartment complex two days earlier. Def. Williams's Mem. Supp. Mot. to Dismiss, ECF No. 95, at 5 n.1. These "facts," however, are extraneous to the amended complaint and, therefore, may not properly be considered on a motion to dismiss.

defendant and considers the totality of the circumstances at the time of the defendant's challenged conduct.  Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007).

Qualified immunity is a question of law consisting of two prongs to be considered in any order.  Pearson v. Callahan, 555 U.S. 223, 232 (2009). The first question inquires whether the facts alleged by a plaintiff make out a violation of a constitutional right.  Id. at 232.  The second inquiry asks "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Id.  A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Reedy v. Evanson, 615 F.3d 197, 224 (3d Cir. 2010), quoting Saucier v. Katz, 533 U.S. 194, 202 (2001).  "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  Pearson, 555 U.S. at 244 (quotations omitted). The court must consider "the information within the officer's possession at that time."  Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 194 (3d Cir. 2005).

The qualified immunity inquiry is premature at this stage of the litigation.  Plaintiff has adequately alleged a violation of his constitutional right to be free from the use of the excessive force.  The prohibition against excessive force was clearly established at the time of the events in question and, at this juncture, I cannot ascertain whether it would have been clear to Officer Jones that his conduct was unlawful in the situation he confronted.  Therefore, I will reject the qualified immunity defense without prejudice to Officer Jones's right to raise it at a later date.

## II.     Motion to Dismiss by Defendants East Vincent Township Police Department and Chief Matthew Williams

Defendants East Vincent Township Police Department and Chief Matthew Williams also seek dismissal of all claims against them.  For the following reasons, I will grant the motion as to East Vincent Township Police Department and deny it as to Chief Williams.

### A.      East Vincent Township Police Department

Like the claims against New Garden Township Police Department, plaintiff's claim against East Vincent Township Police Department also fails for two reasons.  First, as set forth above, a police department "is not a 'person' subject to suit in a § 1983 civil rights action because it lacks an identity separate from the municipality of which it is a part."  Draper v. Darby Twp. Police Dep't., 777 F. Supp. 2d 850, 856 (E.D. Pa. 2011); see also Briggs v. Moore, 251 F. App'x 77, 79 (3d Cir. 2007) (affirming the dismissal of a Section 1983 suit against the Monmouth County District Attorney's Office because it "is not a separate entity that can be sued under § 1983").  Second, even if I were to assume that plaintiff intended to sue East Vincent Township, plaintiff has failed to state a claim against it.  East Vincent Township, either as a police department or a municipality, is not mentioned anywhere in plaintiff's pleadings.  Moreover, plaintiff has not set forth any allegations of any policy, practice or custom within East Vincent Township that could be said to have proximately caused the alleged constitutional violations.  Accordingly, I dismiss this claim with prejudice.

### B.      Chief Matthew Williams

Plaintiff's claim against Chief Williams is also premised on an allegation of excessive force.  Am. Compl. ¶ 3.  He asserts that, in the course of the arrest at issue, Chief Williams threw him onto the floor and, while plaintiff was flat on his stomach, Williams kicked and "knee dropped" him.  Compl. Mem., p.1, lines 3–4.  Officer Williams then tased plaintiff twice, pointed his pistol at him and threatened to shoot him.  Id. at p. 1, lines 6–8.  As with Officer Jones, defendants argue that plaintiff's claim must be dismissed because (1) the Eighth Amendment is inapplicable to plaintiff; (2) the claim fails to set forth a constitutional violation and (3) Williams is protected by qualified immunity.

I decline to dismiss the claims against Williams on any of these grounds. First, consistent with my ruling as to Officer Jones, I will liberally construe the amended complaint to allege an excessive force claim under the Fourth and Fourteenth Amendments. Second, I find that plaintiff's allegations as to Chief Williams—consisting of kicking, "knee dropping" and tasing plaintiff without cause—could give rise to a plausible claim of excessive force. Finally, defendants' request for qualified immunity is premature.[3] Although defendants assert that Chief Williams had a reasonable belief that force was warranted given plaintiff's arrest for murdering his mother and burning her apartment complex two days earlier, the facts as alleged in the amended complaint do not suggest that plaintiff posed any threat against or resistance to Chief Williams at the time of the arrest. Therefore, I decline to dismiss the claim against this defendant and will allow Chief Williams to re-raise the qualified immunity defense at a later time.

### III.   Motion to Dismiss by Defendants PrimeCare Medical, Inc., Staci Suzuki, Psy.D., John P. Fraunces Ed.D., Karen Murphy, RN, Molly Longare, PA-C, Megan Hughes, PA-C, Brianna Culp, PA-C, Corey Cotton, LPN, Mabel Moiyallay, MA, and Nurse Lisa

The third motion before me seeks dismissal of the claims against defendants PrimeCare Medical, Inc., Staci Suzuki, Psy.D., John P. Fraunces Ed.D., Karen Murphy, RN, Molly Longare, PA-C, Megan Hughes, PA-C, Brianna Culp, PA-C, Corey Cotton, LPN, Mabel Moiyallay, MA,

---

[3]      Defendants attach numerous exhibits to their brief and argue that these exhibits demonstrate Chief Williams's reasonable belief in using force in plaintiffs' arrest. In addition, they cite two cases for the proposition that qualified immunity is appropriate under these circumstances. This argument is misplaced. "In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Accordingly, I may not consider defendants' exhibits. Moreover, quite unlike this case, the cases cited by defendants granted qualified immunity at the summary judgment stage. See Wisneski v. Denning, No. 12-864, 2014 WL 1758118 (W.D. Pa. Apr. 30, 2014); Kist v. Fatula, No. 06-0067, 2009 WL 506863 (W.D. Pa. Feb. 27, 2009).

and Nurse Lisa (collectively, "the medical defendants").[4]  The amended complaint sets forth

multiple claims against these defendants including:  (1) medical indifference; (2) Fourteenth

Amendment equal protection violations; (3) Eighth and Fourteenth Amendment conditions of

confinement; and (4) Monell claims against PrimeCare for constitutionally violative customs and

policies.  Based on my review of the amended complaint, I will dismiss all of these claims.

    **A.**    **Claims of Deliberate Medical Indifference**

    Plaintiff first brings a series of claims against the individual medical defendants alleging

"medical indifference" under the Eighth Amendment.[5]  Defendants now contend that these

claims do not survive Rule 12(b)(6) scrutiny.  I agree.

    The Eighth Amendment proscription against cruel and unusual punishment requires that

prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97,

103–105 (1976).  In order to set forth a cognizable claim, an inmate must allege (i) a serious

medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to

that need.  Id. at 104; see also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

"Seriousness" is proven if a plaintiff is able to demonstrate that the need is "'one that has been

diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would

easily recognize the necessity for a doctor's attention.'"  Monmouth Cnty. Corr. Institutional

Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), quoting Pace v. Fauver, 479 F. Supp. 456,

458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981); see also Pearson v. Prison Health Servs.,

___ F.3d ___, 2017 WL 892371, at *4 (3d Cir. Mar. 7, 2017) (noting that a medical need is

---

[4]    Although plaintiff also asserts claims against a Dr. Davis, Am. Compl. ¶¶ 83, 130, 134,
Dr. Davis is not a named defendant in this action.

[5]    Plaintiff actually brings these claims under the Fourteenth Amendment, even though the
relevant constitutional provision is the Eighth Amendment.  In light of plaintiff's pro se status, I
will construe these claims as being raised under the Eighth Amendment.

serious where it has been diagnosed by a physician as requiring treatment).  Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious."  <u>Lanzaro</u>, 834 F.2d at 347.

To demonstrate the deliberate indifference prong of <u>Estelle</u>, a plaintiff must show that the defendants were more than merely negligent in diagnosing or treating his serious medical condition.  Mere medical malpractice or disagreement with the proper treatment of an illness cannot give rise to a violation of the Eighth Amendment.  <u>White v. Napoleon</u>, 897 F.2d 103, 108 (3d Cir. 1990); <u>see also</u> <u>Rouse</u>, 182 F.3d at 197; <u>Lanzaro</u>, 834 F.2d at 346.  Rather, a prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 811 (1994).  The Court of Appeals has found that the deliberate indifference standard is satisfied

> [W]hen prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment.

<u>Whooten v. Bussanich</u>, 248 F. App'x 324, 326–27 (3d Cir. 2007).  Beyond these types of circumstances, a court will generally not "second-guess the propriety or adequacy of a particular course of treatment . . .  [since such determinations] remain[] a question of sound professional judgment."  <u>Inmates of Allegheny Cnty. Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (quotations omitted).  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."  <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir. 1990).

In the present case, plaintiff presents fifteen claims of deliberate indifference as follows:

- A claim against Nurse Cotton for unwrapping and unsplinting plaintiff's wound and finger contrary to doctor's orders on December 24, 2014.  Am. Compl. ¶ 9; Compl. Mem., p.1, line 19.

- A claim against Nurse Moiyallay for not "intaking my medical issues or addressing them" on December 24, 2014.  Am. Compl. ¶ 11; Compl. Mem., p. 1, lines 19–20.

- A claim against Nurse Moiyallay, Nurse Cotton and Dr. Suzuki who witnessed plaintiff's stitches injury, but did not ensure or refer for treatment.  Am. Compl. ¶ 30, Compl. Mem., p. 3, line 18.

- A claim against PA Longare, PA Brianna and PA Hughes for pre-existing conditions never being addressed despite reports from plaintiff and repeated complaints.  Am. Compl. ¶ 32.  These conditions included a herniated disc, disc bulge and stitches.  Compl. Mem., p. 3, line 15.

- A claim against Nurse Cotton and Nurse Moiyallay for not reporting plaintiff's complaints of pre-existing conditions during intake on December 24, 2014.  Am. Compl. ¶ 33; Compl. Mem., p. 3, lines 14–15.

- A claim against all medical staff after plaintiff defecated and staff denied him a shower or hygiene supplies on December 28, 2014.  Am. Compl. ¶ 37.

- A claim against all medical staff for not addressing plaintiff's obvious injuries after the use of physical force by the guards on January 4, 2015.  Am. Compl. ¶ 51.  Specifically, after guards physically assaulted him, plaintiff was taken to medical, given a band-aid and referred for an x-ray, despite the fact that he was reporting more visible injuries such as bleeding in the mouth, wrist pain, chest pain, bruising of his ribs, swollen knee, painful lumps on his head, neck pain, a phlegm cough and difficulty breathing.  Compl. Mem., p. 5, lines 19–22.

- A claim against Dr. Fraunces for being informed of a medical need but not addressing it on January 8, 2015.  Am. Compl. ¶ 62.  Plaintiff received no attention until the following day when he passed out with a fever and profuse sweating and was hyperventilating.  Compl. Mem., p. 6, lines 18–20.

- A claim against Nurse Lisa for not properly treating plaintiff's visible injuries on January 9, 2015.  Am. Compl. ¶ 65.  On that date, Nurse Lisa asked if plaintiff was in pain from previous interactions with the correctional officers and when he said yes, she put him in a room without further attention.  When a nurse later came to check his temperature and blood pressure, he passed out and fell, requiring the nurse and a correctional officer to help him.  Compl. Mem., p. 6, lines 23–26.

- A clam against PA Hughes for not addressing or treating plaintiff's visible injuries on January 9, 2015.  Am. Compl. ¶ 66.  Plaintiff showed Hughes his injuries and explained his problem breathing, but she did not prescribe anything for pain.  Rather, he was given

ibuprofen or Tylenol for the fever and put in a room with a shower.  Compl. Mem., p. 6, lines 26–28.

- A claim against PA Hughes for medical indifference to plaintiff's medical condition on January 11, 2015.  Am. Compl. ¶ 67.  On January 11, 2015, PA Hughes discharged plaintiff from medical, but still did not prescribe anything for pain for his obvious physical injuries.  Compl. Mem., p. 7, lines 8–10.

- A claim against PA Longare for denying plaintiff medical attention for his pre-existing medical condition when informed on January 23, 2015.  Am. Compl. ¶ 71.  On that date, after Longare learned that the x-ray of plaintiff's wrist was within normal limits, Longare prescribed him Napricin for his wrist pain.  He told her about other issues, but she only addressed his wrist saying that he had tendonitis.  Compl. Mem., p. 7, lines 20–24.

- A claim against PA Culp for not treating plaintiff's reported injuries or even inquiring into his condition after being informed.  Am. Compl. ¶ 96.  On February 23, 2015, PA Culp told plaintiff he was being treated, but when he explained that he was still in pain and pointed out that his knee was swollen, she stated that it might be lifelong pain and nothing else.  Compl. Mem., p. 8 line 27–p. 9 line 1.

- A claim against PA Culp for once again ignoring plaintiff's request for medical treatment for existing and pre-existing medical conditions on March 26, 2015.  Am. Compl. ¶ 106.  Plaintiff saw PA Culp on that day and she informed him that he would only be given three more months of Napricin, but she did not address any other issues even when plaintiff showed her his swollen knee.  Compl. Mem., p. 10, lines 6–8.

- A claim against Karen Murphy for not allowing plaintiff to review medical records after repeated attempts.  Am. Compl. ¶ 126.  Specifically, he requested from Karen Murphy the opportunity to review his medical records, but did not receive a response from her.  Compl. Mem., p. 12, lines 21–23.

None of these claims allege facts sufficient to set forth a plausible claim for relief.

Primarily, for most of these claims, plaintiff has not alleged facts upon which I can infer that he

had a "serious" medical condition that either has been diagnosed by a physician as requiring

treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's

attention.  Lanzaro, 834 F.2d at 347 (quotations omitted).  Nor has he alleged that delay in

treatment caused him to suffer a life-long handicap or permanent loss.  Id. at 347.  Indeed, the

alleged facts suggest only that plaintiff had a finger that was splinted, a wound that received

stitches, a pre-existing but non-severe back condition, some non-specific injuries from an

altercation with the guards, an illness with a fever and a swollen knee.  None of these conditions suggests a "serious" medical condition for purposes of a constitutional claim.

More importantly, even assuming plaintiff could establish a serious medical condition, he has failed to plead that any of the named defendants acted with deliberate indifference.  Plaintiff never disputes that he received medical care for his various injuries.  Rather, he simply disagrees with the type and extent of the care he received, an allegation that does not state a valid claim of medical mistreatment under the Eighth Amendment.  Pearson, 2017 WL 892371, at *7.  At no point does plaintiff suggest that he was denied reasonable requests for medical treatment that exposed him to undue suffering or the threat of tangible residual injury.  Nor does plaintiff claim that medical treatment was denied for non-medical reasons or that he was prevented from receiving recommended treatment for serious medical needs or denied access to qualified medical professionals.  Indeed, the allegations in plaintiff's pleadings clearly demonstrate that he was seen, evaluated and provided medication by medical personnel on multiple occasions.  As the amended complaint does not put forth any facts to allow an inference of deliberate indifference, I dismiss these claims with prejudice.

## B.    Equal Protection Claim

Plaintiff has also alleged an equal protection claim against PA Longare, PA Culp and PA Hughes.  As I find that plaintiff has not adequately pled such a claim, I will grant defendants motion to dismiss.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV § 1. The Court of Appeals has recognized that in order to establish a viable equal protection violation, a plaintiff must show intentional or purposeful discrimination.  See Wilson v. Schillinger, 761 F.2d 921,

929 (3d Cir. 1985). The Equal Protection Clause is not a command that all persons be treated alike but, rather, "a direction that all persons similarly situated should be treated alike." Artway v. Attorney Gen. of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996), quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

If the action does not involve a suspect classification, the plaintiff may establish an equal protection claim under a "class of one" theory by showing that he or she was intentionally treated differently from other similarly situated individuals without a rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  To allege an equal protection claim under a class-of-one theory, a plaintiff must show that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008), citing Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006)). In a prison setting,

> [A]n inmate must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination . . . . He must also show that the disparity in treatment cannot survive the appropriate level of scrutiny, which, in a prison setting, means that [a plaintiff] must demonstrate that his treatment was not "reasonably related to [any] legitimate penological interests."

Holland v. Taylor, 604 F. Supp. 2d 692, 701 (D. Del. 2009), quoting Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation, quotation marks, and alterations omitted).  Stated simply, the Equal Protection Clause in a prison setting only requires that a regulation which results in unequal treatment of an inmate bear some rational relationship to a legitimate penological interest.  See DeHart v. Horn, 227 F.3d 47, 61 (3d Cir. 2000).

Plaintiff's equal protection claim does not claim discrimination based on his membership in a protected class.  Rather, he alleges that PA Culp, PA Longare and PA Hughes violated his rights by treating him differently than inmates similarly situated.  Am. Compl. ¶ 120.  He reasons that, on June 11, 2015, he passed out while using the bathroom.  Although he told the nurse that his blood pressure had been lower than usual and was low that night, the nurse did not provide any follow up.  Compl. Mem., p. 11, line 26–p. 12, line 1.  Another inmate, Hart, told him that he had the same issue with his blood pressure and was put on regular blood pressure checks.  Id. at p. 12, line 2.  Such bare statements fail to adequately allege that inmate Hart was similarly situated for purposes of the equal protection clause.  Moreover, even assuming this one inmate was similarly situated, plaintiff fails to make the basic allegation either of intentional or purposeful discrimination necessary to prove an equal protection violation or that there was no rational basis to any legitimate penological interest for not giving him regular blood pressure checks.  Even drawing all reasonable inferences from the amended complaint in plaintiff's favor, plaintiff's equal protection claim appears to be nothing more than a mere disagreement with medical staff as to treatment decisions.  Despite the more relaxed scrutiny afforded to pro se prisoners, such a claim does not survive Rule 12(b)(6) scrutiny.

### C.    Eighth Amendment Conditions of Confinement Claim

Plaintiff brings a few sporadic claims under the Eighth Amendment alleging constitutionally inadequate conditions of confinement against the medical defendants.  I find that they fail to state a claim upon which relief may be granted.

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments: they cannot be 'cruel and unusual.'"  Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  Prison officials have a duty under the Eighth Amendment to "provide humane

conditions of confinement." See Farmer v. Brennan, 511 U.S. 825, 832 (1994). Thus, to prevail

on a "conditions of confinement" claim, an inmate must show that the deprivation is "objectively

sufficiently serious" and that the prison official subjectively acted with deliberate indifference to

inmate health or safety. Id. at 834. Deliberate indifference is something more than mere

negligence, but something less than acts or omissions purposely designed to cause harm. Id. at

835; Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

In the amended complaint, plaintiff alleges the following Eighth Amendment claims: [6]

1.    A claim against Nurse Cotton, Correctional Officer Riggens and others for giving
      plaintiff involuntary medications and for subjecting him to an "unreasonable
      strip." Am. Compl. ¶¶ 16, 17. Specifically, on December 26, 2014, a correctional
      officer (defendant Officer Riggens) came to his cell and tauntingly waived a
      needle at him. Various staff came over, pulled plaintiff out of his cell, stripped
      him of his clothing and gave him a smock and gave him an involuntary shot of
      medication. Compl. Mem., p. 1, line 26–p. 2, line 2; id. p. 3, lines 19–21. Nurse
      Cotton is not personally implicated in these actions.

2.    A claim against Dr. Suzuki for "denial of basic human need shower/hygiene to
      plaintiff" from December 24, 2014 to December 29, 2014. Am. Compl. ¶ 26. He
      explains that "[w]hile in medical I informed every nurse and Dr. (Suzuki) of my
      pain and request for hygiene yet nothing was given." Compl. Mem., p. 3 lines 8–
      9.

Based on these sparse allegations, I cannot find that plaintiff has adequately pled an

Eighth Amendment violation. These facts do not suggest that plaintiff was incarcerated under

conditions posing a substantial risk of serious harm or even that he suffered any such harm.

Moreover, plaintiff has failed to set forth facts showing that either Nurse Cotton or Dr. Suzuki

was subjectively aware of any risk of harm to plaintiff. Indeed, plaintiff has failed to plead that

Nurse Cotton was even involved in giving the involuntary medication or ordering the "strip" of

---

[6]    Plaintiff brings some of these clams under the Fourteenth Amendment. Liberally
construing his pleadings, I will assume that plaintiff meant to assert violations of the Eighth
Amendment.

plaintiff, or that Dr. Suzuki knew about or had any control over when plaintiff would receive a shower.  Given this cursory pleading, I will dismiss these claims.

### D.      Section 1983 Claims Against PrimeCare

Plaintiff also seeks to impose section 1983 liability against PrimeCare, the company that employed the prison medical staff and managed the prison medical operations.  Under § 1983, a private corporation contracted by a prison to provide healthcare for inmates is similar to a municipality in that it cannot be held liable on a respondeat superior theory.  Gannaway v. Prime Care Med., Inc., 150 F. Supp. 3d 511 (E.D. Pa. 2015).  "[R]ather, pursuant to Monell, such a private corporation can be held liable for constitutional violations only if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs."  Gannaway, 150 F. Supp. 3d at 350, citing Natale v. Camden Cnty Corr. Facility, 318 F.3d 575, 583–84 (3d Cir. 2003); see also Weighner v. Prison Health Servs., 402 F. App'x 668, 669–70 (3d Cir. 2010) (holding that a private corporation providing healthcare to state prisoners cannot be held liable under a respondeat superior theory).  "To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."  McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).  If a plaintiff alleges that he or she was harmed by a custom, as opposed to a formally enacted policy, "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker."  Id.  Failure "to allege conduct by a municipal decisionmaker" is "fatal" to a Monell claim. Id.; Santiago v. Warminster Twp., 629 F.3d 121, 135 & n.11 (3d Cir. 2010) (noting that a plaintiff has "the obligation to plead in some fashion that [the decisionmaker] had final policy making authority, as that is a key element of a Monell claim").  In addition, a plaintiff must establish causation by properly pleading that the

municipality's policy or custom "was the source of [his or] her injury."  Santiago, 629 F.3d at

135.

Plaintiff makes the following claims against PrimeCare:

1. A claim for cursory intake process done by Nurse Moiyallay as policy or custom. Am. Compl. ¶ 10.  As support for this claim, plaintiff alleges that Nurse Moiyallay did intake questions at the prison and plaintiff informed her of the incident occurring at his arrest as well as his pre-existing condition from a work accident.  He also informed her of his prescribed medication and because of the nature of the medication, he was sent to medical for medical observation.  Compl. Mem., p. 1, lines 19–22.

2. A claim for "custom or policy of indifference to a basic human need hygiene/showers to inmates."  Am. Compl. ¶ 25.  Plaintiff alleges that even after defecating on himself on December 28, 2014, during a confrontation with the guards, he was not given a shower until December 29, 2014.  Compl. Mem., p. 2, line 13.

3. A claim for the policy allowed in taking J-Block's sick call request which does not ensure inmates reports or request for medical attention.  Am. Compl. ¶ 141.

4. A claim for the custom of influencing the care of inmates when they may have been subject to force by the correctional officers at Chester County Prison.  Id. ¶ 145.

5. A claim for the policy or custom of how inmates request and receive grievances, which is inadequate.  Id. ¶ 146.

Under the aforementioned standards, these allegations are simply inadequate to set forth a

claim of Monell liability against PrimeCare.  As to claims one and two above, although plaintiff

uses the buzzwords of "custom" and "policy," he neither alleges sufficient facts indicating the

existence of such a policy or custom nor identifies a municipal policymaker.  See Buoniconti v.

City of Phila., 148 F. Supp. 3d 425, 437 (E.D. Pa. 2015) ("[T]o survive Defendants' motion to

dismiss, Plaintiff must have set forth sufficient facts indicating a policy or custom of the City.")

Thus, these allegations constitute nothing more than an attempt to impose vicarious liability on

PrimeCare for the actions by individual defendants.  As to the third claim above, plaintiff points

to no facts in his amended complaint or his complaint memorandum that describe any instance wherein he was denied a sick call request while on J-Block.  To the contrary, plaintiff describes numerous instances of requesting and being granted visits to medical during which time he received medical care, albeit not always the precise care he desired.  As to claim number four, I am unable to decipher any policy or custom underlying plaintiff's allegation of "influencing the care of inmates," and plaintiff offers no further explanation.  Finally, in claim number five, plaintiff complains of a policy influencing the request and receipt of grievances—a task that is beyond the scope of PrimeCare's duties in the prison.[7]

Absent some identification of some facts underlying the alleged custom or policy that directly caused the alleged constitutional transgressions,[8] plaintiff has failed to adequately plead

---

[7]    Plaintiff's response to the motion to dismiss concedes that the process in which to get a medical grievance is through Mr. Jack Healy, who is not an employee of PrimeCare.  Pl.'s Resp. Opp'n Mot. to Dismiss, ECF No. 98, at 6.  To the extent plaintiff is referring to the request and receipt of his medical files, plaintiff specifically alleges that when he wanted to inspect his medical history and medical files, he wrote to PrimeCare which provided him with instructions on the procedure of how to do so.  Compl. Mem., p. 11, lines 7–8.

[8]    In his response in opposition to the motions to dismiss, plaintiff argues:

> Primecare is subject to Monell due to having Doctors who have Authoritative positions who allowed the constitutional violation that are asserted.  For example, why was plaintiff and another Hispanic inmate; Kenneth Santos the only ones denied shower in the medical housing area.  This is grounds for equal protection claims under § 1985.  For example why was plaintiff's wound not treated but other similarly situated inmates wounds treated, cleaned, and rebandaged?  [T]his is grounds for equal protection violation of medical care.  For example why does Primecare have a policy that a inmate must see a nurse and pay for 3 visits to the nurse before seeing a Physician Assistant?  This is grounds for liability under Monell.  For example why did not the treating PA's look into plaintiff's pleas of back pain history so that they could treat him and make an informed decision, instead of ignoring an established condition for 9 months.  These are the issues that the defendant seem to overlook in an attempt to avoid liability and responsibility for th[ei]r actions.

Monell liability against PrimeCare.  Therefore, I will grant defendants' motion to dismiss this claim.

### E.       Claims Under 42 U.S.C. §§ 1985 and 1986

Finally, plaintiff alleges that all of the medical defendants are subject to liability under 42 U.S.C. §§ 1985 and 1986.  The medical defendants again move to dismiss.  I agree and will dismiss these claims with prejudice.

To maintain a § 1985 cause of action, a plaintiff must establish: (1) a conspiracy by the defendants; (2) that the conspiracy was designed to deprive plaintiff of the equal protection of the laws or equal privileges and immunities; (3) the commission of an overt act in furtherance of that conspiracy; (4) a resultant injury to person or property or a deprivation of any right or privilege of citizens; and (5) that defendants' actions were motivated by a racial or otherwise class-based invidiously discriminatory animus.  Litz v. Allentown, 896 F. Supp. 1401, 1414 (E.D. Pa. 1995).  "To withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor."  DeJohn v. Temple Univ., No. 06-778, 2006 WL 2623274, at *5 (E. D. Pa. Sept. 11, 2006), quoting Boddorff v. Publicker Indus., Inc., 488 F. Supp. 1107, 1112 (E.D. Pa. 1980).  In addition, specific allegations of an agreement to carry out the alleged chain of events are essential in stating a claim for conspiracy.  Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997).  "It is not enough that the end result of the

---

Pl.'s Resp. Opp'n Mot. to Dismiss, ECF No. 98, at 2–3 (underlining in original).  None of these theories of Monell liability are included in plaintiff's amended complaint.  Having had the opportunity to amend his complaint, and having filed a sixteen-page amended complaint with allegations against sixty defendants, plaintiff may not now raise new theories of Monell liability in his response to the second round of motions to dismiss.  In any event, these arguments simply attempt to impose vicarious liability on PrimeCare rather than properly setting forth a policy, custom or practice that caused the alleged constitutional violations.

parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the

harm acted in conscious parallelism."  Id.  Finally, the element of class-based animus is essential

to a proper § 1985 claim.  Robison v. Canterbury Village, Inc., 848 F.2d 424, 430 (3d Cir. 1988);

Pratt v. Thornburgh, 807 F.2d 355, 357 (3d Cir. 1986) ("As to the claim founded on 42 U.S.C.

§1985(3), we need only say that it was properly denied since it is not alleged that the conspiracy

involved in that count was motivated by a racial or class-based animus.").

Plaintiff sets forth two section 1985 claims against the medical defendants as follows:

1.  A claim against CO Riggins and Nurse Cotton for agreeing upon behavior that violated plaintiff's rights to be free from involuntary medication.  Am. Compl., § 1985 ¶ 2.

2.  A claim against the CEU team and medical staff on December 28, 2014 for further denying plaintiff hygiene supplies/shower after plaintiff defecated on himself.  Am. Compl., § 1985 ¶ 4.

Absent from plaintiff's amended complaint are any specific allegations of an agreement to carry

out these actions.  Moreover, plaintiff has not put forth any allegations from which I can infer

that these actions were motivated by any racial or class-based animus.  Accordingly, I dismiss

these claims with prejudice.

The dismissal of plaintiff's § 1985 claim necessitates the dismissal of his § 1986 claim.

Under 42 U.S.C. § 1986:

> Every person who, having knowledge that any of the wrongs
> conspired to be done, and mentioned in the preceding section [42
> U.S.C. § 1985], are about to be committed, and having power to
> prevent or aid in preventing the commission of the same, neglects
> or refuses so to do, if such wrongful act be committed, shall be
> liable to the party injured, or his legal representatives, for all
> damages caused by such wrongful act, which such person by
> reasonable diligence could have prevented; and such damages may
> be recovered in an action on the case; and any number of persons
> guilty of such wrongful neglect or refusal may be joined as
> defendants in the action.

42 U.S.C. § 1986.  Because § 1986 claims are derived from § 1985 claims, if a plaintiff fails to

state a § 1985 claim, his § 1986 claim also fails.  Koorn v. Lacey Twp., 78 F. App'x 199, 208 (3d

Cir. 2003)  Hilton v. Whitman, No. 04-6420, 2008 WL 5272190, at *11–12 (D.N.J. Dec. 16,

2008).  Accordingly, defendants' motion to dismiss this claim will be granted as well.

## IV.  Motion to Dismiss by the Chester County Defendants

The final motion to dismiss plaintiff's amended complaint comes from the Chester

County Defendants, which include the County of Chester, Cpl. Michael Marconi, Officer Troy

Daniels, Sgt. Yaroslav Yancik, CO Wilson, CO Valerie McCormack, CO Joseph Moore, Cpl.

Preston Whitesell, Cpl. Jose Garcia, Lt. P. Steve Sergi, Lt. David Ham, Lt. Edson Forbes, Capt.

Morgan Taylor, Warden D. Edward McFadden, Capt. Harry Griswold, Lt. Robert Mastnjak, Sgt.

Donald Muller, Sgt. Golden English, CO Randy Little, CO Kenneth Klinger, CO David Haines,

Capt. Ocie Miller, Capt. Pamela Saunders, Capt. Gene Farina, Major D. Scott Graham, CO

Powers, Deputy Warden Walter Reed, Counselor Jorge Vazquez, CO Weed, Corporal Ca'role

White, Lt. James Brooks, Sgt. Michael Young, Sgt. Arnold Lynch, CO Raymond Riggins (and/or

Riggens), CO (CEU) Teary, Director of Treatment Services Jack Healy, Corporal James Svah,

CO Jesus Ruiz, CO Domonique Bemberry, CO Wesley Suydum, CO Weed, Officer Stevenson,

Work Supervisor Robert Francis, Chester County Detectives Office, Detective Robert Balcunis,

Detective David Grandizio and Detective Ken Beam.  For the reasons set forth below, I will

grant this motion in part and deny it in part.

### A.  Municipal Liability Claim Against Chester County

Plaintiff first alleges a municipal liability claim against Chester County for:  (1) its policy

or custom of use of zip ties when detaining people and (2) the use of dynamic entry by its

officers.  Am. Compl. ¶¶ 4–5.  In support of this claim, however, plaintiff provides absolutely no

factual allegations.  Although plaintiff discusses actions by Officers Williams and Jones, both of whom work for township police departments located in Chester County, he does not allege that these officers used zip ties or dynamic entry.  Absent some factual underpinning for this claim, plaintiff cannot establish that these alleged policies resulted in any violation of his constitutional rights.  Therefore, I dismiss this claim.

### B.    Fourteenth Amendment Delay in Medical Treatment

Plaintiff next contends that he was denied medical care during his arrest by Detectives Balchunis, Beam and Grandizio.  A deliberate indifference standard under the Due Process Clause of the Fourteenth Amendment applies to an individual's claim for inadequate medical care during the course of an arrest.  See Smith v. Gransden, 553 F. App'x 173, 177 (3d Cir. 2014); Suarez v. City of Bayonne, 566 F. App'x 181, 187 (3d Cir. 2014).  In order to succeed on such a claim, a plaintiff must provide evidence of a serious medical need and acts or omissions by arresting officers indicating deliberate indifference to those needs.  Bocchino v. City of Atlantic City, 179 F. Supp. 3d 387, 406 (D.N.J. 2016).

As with Officers Jones and Williams, discussed above, plaintiff alleges that during the course of his arrest, Detectives Balchunis, Grandizio and Beam failed to give on site medical attention and unnecessarily delayed in his medical treatment.[9]  Am. Compl. ¶¶ 6–7.  Specifically, Officers Jones and Williams punched, kicked and tased plaintiff.  Compl. Mem., p. 1, lines 1–8. He had bruising, swelling, blood coming out of his ear and scuff marks on his left cheek, and he required stitches and a finger cast for swelling in his hand.  Id. at p. 1, lines 8–11.  He was turned

---

[9]    Plaintiff brings these claims under the Eighth Amendment.  The Eighth Amendment, as noted above, only applies to those in confinement.  These particular claims are governed by the Fourteenth Amendment.

over to the Chester County Detectives Balchunis, Grandizio and Beam who, "upon [his] medical request, prolonged and delayed [his] medical treatment."

These allegations fail to state a viable Fourteenth Amendment claim. Immediately following the allegations regarding his injuries, plaintiff concedes that he was brought to the prison medical unit where he received treatment for his injuries. Compl. Mem., p. 1, lines 15–23. Based on plaintiff's factual assertions, I can draw no reasonable inference either that the Detectives' acts or omissions demonstrated deliberate indifference to his medical needs. Accordingly, I dismiss these claims.[10]

### C.    Eighth Amendment Excessive Force Claims

When analyzing an excessive force claim under the Eighth Amendment, the court must determine "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320–21 (1986) (citations omitted). In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response. Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), citing Whitley, 475 U.S. at 321. "Therefore, de minimis injuries do not necessarily establish de minimis force." Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002). When there are two different accounts of an incident, there remains "an

---

[10]      Plaintiff also brings a claim against Detectives Grandizio and Balchunis for impermissibly sending a photo of plaintiff to Nurse Cotton. Am. Compl. ¶ 8. I cannot discern any constitutional violation from this factual allegation and plaintiff has not elaborated any further on this claim. I will therefore dismiss it.

issue of fact to be resolved by the fact finder based upon the totality of the evidence; it is not an issue of law a court can decide." Id.

Plaintiff's amended complaint sets forth two instances of excessive force by several of the Chester County defendants.  First, plaintiff claims that Cpl. Marconi, CO Daniels and the cell extraction unit team used excessive force against him on December 28, 2014.  Am. Compl. ¶¶ 20, 22, 23, 24.  On that date, plaintiff was knocking on his door requesting "hygiene" when CO Daniels got vulgar and called a cell extraction unit team.  He purportedly complied with the team members, but an officer aimed a pepper pistol at him.  Although he followed orders to lie down, he was shocked with a shield until he urinated and defecated.  His wrist was then twisted and he was lifted by his wrists, instead of his shoulder, resulting in serious shoulder pain.  He was then stripped, placed in a restraint chair and, while strapped in, choked by Cpl. Marconi.  CO Daniels subsequently cited plaintiff for these events.  Compl. Mem., p. 2, lines 3–12.

The second alleged incident involving Sgt. Yancik, Cpl. Whitesell, CO Moore and Cpl. Garcia occurred on January 4, 2015.  Am. Compl. ¶¶ 41–44.  The day prior, Sgt. Yancik escorted plaintiff from the restricted housing unit to the medical unit.  Compl. Mem., p. 4, lines 14–15.  When he entered the nurses' office, plaintiff told the nurse that he got eighty days in "the hole" because of Sgt. Yancik's lying about his actions.  Yancik jumped in the conversation and threatened to get plaintiff more time until the nurse calmed the two men down.  Id. at lines 16– 20.  Later that shift, Yancik came into his cell and threatened plaintiff with violence.  Id. at lines 20–24.  The following day, after Cpl. Whitesell escorted plaintiff back to his cell from medical, Whitesell grabbed plaintiff, who was handcuffed in front, and threw him into the bunk stating plaintiff "wanted to play."  Id. at p. 5, lines 2–4.  The cuffs impacted on plaintiff's chest and wrist and he was slammed to the floor injuring his knee.  Id. at lines 4–5.  Even though plaintiff

gasped for air, said he could not breathe and stated "y'all gonna hurt me with cuffs on," Cpl.

Whitesell told plaintiff to "shut up and kiss the floor like a good b**ch, f***ing pussy" while

kicking him in the ribs and punching him in the body.  Id. at lines 5-8.  CO Moore then punched

him in his head and placed his full weight on his neck and jaw area.  Id. at lines 8–10.  For a

moment, plaintiff blacked out until Cpl. Garcia twisted his hands and wrists and stomped down

on his cuffed wrist causing pain and cutting his wrists.  Id. at lines 10-12.  Plaintiff struggled to

stand up as they took the cuffs off, "forcefully placing a foot on the cell door to pull," and Cpl.

Whitesell bent his thumb back purposefully.  Id. at lines 12–15.

        In an attempt to have these claims of excessive force dismissed, defendants contend that

exhibits B and D of the amended complaint place the account in the proper context and show that

the reason for the force was not the wanton infliction of pain, but rather "to keep Plaintiff from

injuring himself and others and to maintain order."  Chester Cnty Defs.' Mem. Supp. Mot to

Dismiss, ECF No. 90-1, at 9.  At best, however, these exhibits simply reflect a factual dispute as

to the precise course of events.  On a motion to dismiss, I am obligated to take all properly plead

factual averments in the complaint as true.  Doing so, I can reasonably infer, under a totality of

the circumstances analysis, that the officers maliciously inflicted force on plaintiff without

genuine need and without any effort to temper the severity of their actions.  See Mesinger, 293

F.3d at 649 ("Punching and kicking someone who is handcuffed behind his back and under the

control of at least six prison guards as he is being thrown into cabinets and walls is 'repugnant to

the conscience of mankind,' absent the extraordinary circumstances necessary to justify that kind

of force.").  As plaintiff has adequately pled an Eighth Amendment claim of improper use of

excessive force against defendants Marconi, Daniels, the CEU team, Yancik, Moore, Whitesell, I

will deny the motion to dismiss these claims.

**D.      Eighth Amendment Conditions of Confinement Claims**

A substantial number of plaintiff's claims allege cruel and unusual conditions of confinement under the Eighth Amendment.  As set forth above, the Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as reasonable safety, adequate physical space and the need for some degree of ventilation and fresh air.  Helling v. McKinney, 509 U.S. 25, 32 (1993).  It does not, however, mandate that prisons be free of discomfort and prisons may be "restrictive and even harsh."  Farmer, 511 U.S. at 833, quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  "No static test determines whether conditions of confinement are 'cruel and unusual.'  These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society.'"  Tillery v. Owens, 719 F. Supp. 1256, 1261 (W.D. Pa. 1989), citing Rhodes, 452 U.S. at 346.  Conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  Rhodes, 452 U.S. at 347.

Plaintiff sets forth numerous types of Eighth Amendment violations.  I review each category individually.

**1.      Verbal Harassment**

A multitude of plaintiff's claims against defendants involve the defendants' alleged verbal harassment of plaintiff as follows:

- A claim against Daniels for harassment of plaintiff during his medical appointment.  Am. Compl. ¶ 38; Compl. Mem., p. 4, lines 15–20.

- A claim against Yancik for threatening plaintiff with physical harm on January 3, 2015 by telling him "do something so I can f**k you up" and "you gonna get yours anyway." Am. Compl. ¶ 39; Compl. Mem., p. 4, lines 23–35.

- A claim against Daniels for harassing plaintiff.  Am. Compl. ¶ 69.

33

- A claim against Svah for harassing plaintiff on February 9, 2015, by giving him a hard time about getting books from the law library and filing a grievance.  Id. ¶ 78; Compl. Mem., p. 8, lines 14–17.

- A claim against Powers for harassment on February 17, 2015 by telling him he did not submit a law library request.  Am. Compl. ¶ 83; Compl. Mem., p. 8, lines 20–22.

- A claim against Sgt. English for threatening plaintiff on April 24, 2015 with bodily harm. Am. Compl. ¶ 108.

- A claim against CO Haines and CO Klinger for discussing plaintiff's business with other inmates.  Id. ¶¶ 113–14.

- A claim against CO Powers for harassing plaintiff in front of other inmates regarding plaintiff's legal status and information on August 15, 2015.  Am. Compl. ¶ 134; Compl. Mem., p. 14, lines 4–5.

"Verbal harassment of a prisoner, without more, does not violate the Eighth Amendment."  Brown v. Deparlos, 492 F. App'x 211, 215 (3d Cir. 2012), citing McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) and DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000).  A prisoner's rights are not violated when prison guards direct towards him racially derogatory or sexually explicit language, vulgarity, profane and offensive name-calling or idle and laughing threats.  Kirk v. Roan, No. 04-1990, 2006 WL 2645154, at *4 (M.D. Pa. Sept. 14, 2006) (citing cases).  Given this principle, I must dismiss plaintiff's verbal harassment claims.

### 2.   Failure to Protect/Intervene

Plaintiff also brings failure to protect and failure to intervene claims against defendants Riggens, Daniels, Yancik, Moore, Garcia, Klinger, Sergi, Taylor, McFadden, Vasquez, Little, Bemberry, Forbes, Taylor, Furina, Graham and all high-ranking officers in the prison.  I find no merit to all but one of these claims.

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."  Farmer, 511 U.S. at 834 (quotation marks

omitted).  Therefore, the Eighth Amendment imposes on prison officials "a duty to protect prisoners from violence . . . ."  Id. at 833 (quotations omitted).  To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element).  Id. at 834.; see also Griffin v. DeRosa, 153 F. App'x. 851 (3d Cir. 2005).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 838.  "[A]n officer's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  Id.  An officer is only liable for failure to protect an inmate from another officer's excessive use of force "if there is a realistic and reasonable opportunity to intervene."  Mensinger, 293 F.3d at 650–51.

Plaintiff alleges a claim against CO Riggens for failing to protect plaintiffs from the illegal administration of involuntary medication on December 26, 2014.  Am. Compl. ¶ 15; Compl. Mem., p. 1 line 26–p. 2 line 2.  This claim is meritless.  The Constitution accepts a *de minimis* amount of force so long as it is not "repugnant to the conscience of mankind."  Hudson v. McMillian, 503 U.S. 1, 8–9 (1992) (quotations omitted).  "[I]solated and unauthorized incidents do not violate the Eighth Amendment."  Barber v. Grow, 929 F. Supp. 820, 823 (E.D. Pa. 1996).  "[C]ourts in this district have frequently dismissed claims for their failure to allege more than minimal injury or the requisite state of mind."  Id. (citing cases).  Based on plaintiff's cursory allegations, I cannot find that the administration of a single shot of medication involved a substantial risk of serious harm.

Plaintiff brings a claim against CO Daniels for failing to protect plaintiff and unnecessarily calling the cell extraction unit team.  Am. Compl. ¶ 19.  On December 28, 2014, while plaintiff was knocking on his cell door requesting hygiene from Daniels and called for a cell extraction unit team.  Compl. Mem., p. 2, lines 4–6.  Although the excessive force claim against the cell extraction team members remains viable, plaintiff has not alleged that CO Daniels was involved in the use of force, knew that such use of force was going to occur or had a reasonable opportunity to intervene.

Plaintiff alleges that Sgt. Yancik failed to protect him by not directing CO Daniels to cease his harassment of plaintiff during plaintiff's medical appointment on January 8, 2015.  Am. Compl. ¶ 40.  Sgt. Yancik had escorted plaintiff to his medical appointment and CO Daniels was taunting him and Yancik did nothing.  Compl. Mem., p. 4, lines 14–19.  Like the claim against Officer Riggens, this claim alleges neither any real injury nor the requisite state of mind.

Plaintiff sets forth a claim against CO Moore and Cpl. Garcia for failing to protect plaintiff from Cpl. Whitesell on January 4, 2015.  Am. Compl. ¶¶ 45, 46.  Plaintiff explains that when Whitesell attacked plaintiff, Moore and Garcia did nothing and, in fact, contributed to the beating.  Compl. Mem., p. 5, lines 8–15.  Based on plaintiff's detailed allegations about the attack and the remaining excessive force claim, one can make the reasonable inference that these defendants were aware of the force and had an opportunity to intervene, but did not.  Therefore, the failure to protect/intervene claims against Moore and Garcia survive Rule 12(b)(6) review.

Plaintiff also brings a claim against CO Klinger for failure to protect plaintiff from the attack by Whitesell, Garcia and Moore on January 4, 2015.  Am. Compl. ¶ 47.  Specifically, he notes that after the attack, plaintiff began requesting medical and Klinger told him to "shut up and rest my neck" and then called more officers to "come get [him]."  Compl. Mem., p. 5, lines

15–17.  Plaintiff does not allege that Klinger was aware of any facts prior to the attack that would have alerted him to the substantial risk of harm and on which he could have acted. Therefore, this claim must be dismissed.

Plaintiff contends that Lt. Sergi, Cpt. Taylor and Warden McFadden are liable under a failure to protect theory for not investigating plaintiff's claims of being assaulted on January 4, 2015.  Am. Compl. ¶¶ 53–55, Compl. Mem., p. 6, lines 7–10.  These allegations, however, do not set forth a failure to protect claim.  "[A]n allegation that an official ignored an inmate's request for an investigation or that the official did not properly investigate is insufficient to hold that official liable for the alleged violations."  Padilla v. Beard, No. 06-478, 2006 WL 1410079, at *6 (M.D. Pa. May 18, 2006); see also Horan v. Wetzel, No. 13-140, 2014 WL 631520, at *7 (M.D. Pa. Feb. 18, 2014) ("Generally, an allegation of failure to investigate an event after the fact, without another recognizable constitutional right, is not sufficient to sustain a § 1983 claim.").  Plaintiff does not claim that these defendants had any contemporaneous knowledge of the attack or approved the use of such force.  Absent such facts, this claim must be dismissed.

Plaintiff alleges a claim against Counselor Vasquez for failing a duty to protect plaintiff from a deprivation of property interest.  Am. Compl. ¶ 82.  He offers no further explanation for this claim.  Moreover, a property interest does not equate to a serious risk of harm necessary to establish a failure to protect claim.  Therefore I will dismiss this claim.

Plaintiff next sets forth a claim against CO Little for failing to protect plaintiff from Cpl. Svah's harassment of plaintiff when entering plaintiff's cell on February 19, 2015.  Am. Compl. ¶ 87.  Plaintiff alleges that after he submitted grievances, Cpl. Svah and CO Little entered his cell and told him he was not getting any more law library and "f**k a grievance, [he] can asked but

ain't getting sh\*\*." Compl. Mem., p. 8, lines 23–26.) These facts assert only verbal harassment and do not give rise to a reasonable inference that any substantial risk of harm existed.

Plaintiff alleges a claim against CO Bemberry for "not addressing the inmates' issues" properly on March 21, 2015 and "failing a duty to protect." Am. Compl. ¶ 104. When inmate Debellis told Bemberry about feeling suicidal, Bemberry replied "have fun." Compl. Mem., p. 9, lines 25–26. Plaintiff, however, has no standing to bring a claim on behalf of another inmate. Horan, 2014 WL 631520, at \*17. Therefore, I do not have jurisdiction not have jurisdiction to consider this claim.

Finally, plaintiff brings a claim against Lt. Forbes, Cpt. Furina, Cpt. Taylor, Major Graham and Warden McFadden for failing to protect plaintiff's due process rights despite being informed of others' harassment of him. Am. Compl. ¶ 111. Specifically, plaintiff claims that he wrote a grievance to these defendants on April 26, 2015, but only received a response from Cpt. Taylor denying the grievance. Compl. Mem., p. 10, lines 17–19. As set forth above, however, "[a]n allegation that an official ignored an inmate's request for an investigation or that the official did not properly investigate is insufficient to hold that official liable for the alleged violations." Padilla, 2006 WL 1410079, at \*6.

In light of the foregoing, I will not dismiss the claims against CO Moore and Cpl. Garcia for failure to protect plaintiff in connection with the attack by Whitesell. I will, however, dismiss the remainder plaintiff's failure to protect claims with prejudice.

### 3.    Denial of Hygiene/Shower

Plaintiff's next category of Eighth Amendment conditions claims alleges denials of hygiene supplies or showers. Plaintiff sets forth the following claims:

- From December 26, 2014 to December 29, 2014, plaintiff was not given a shower. On December 26, 2014, Officer Riggens ignored his request for a shower. Am. Compl. ¶ 13;

Compl. Mem.,  p. 1, lines 25–26.  On December 28, 2014, CO Daniels denied his request for a shower.  Am. Compl. ¶ 19; Compl. Mem., p. 2, lines 2–4.

- Failure of CEU team to allow plaintiff a shower and hygiene supplies after he defecated on December 28, 2014.  Am. Compl. ¶ 37.

- Failure of CO Wilson and CO McCormick to ensure that plaintiff got a shower between December 26, 2014 and December 29, 2014.  Id. ¶¶ 28, 29.

- Denial of shower and hygiene by Officer Yancik.  Id. ¶ 27.  During one of his checkups in medical, plaintiff requested hygiene supplies and a shower, but Officer Yancik denied his request.  Plaintiff pointed out that Yancik was chewing tobacco and said "just because [you] got that tobacco doesn't mean I don't wanna brush my teeth."  Yancik supposedly got upset about that comment.  Compl. Mem., p. 2, lines 17–22.

- Denial of hygiene by Officer Weed.  Am. Compl. ¶ 142.  On March 2, 2015, Weed "denied [plaintiff] his legal bag and hygiene after [his] food tray was missing food and he wouldn't call for it."  Compl. Mem., p. 15, lines 18–20.

These claims do not give rise to any constitutional violation.  As noted above, the Eighth Amendment[11] requires that prison officials provide "humane conditions of confinement" including adequate food, clothing, shelter and medical care.  Farmer, 511 U.S. at 832.  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.

The Eighth Amendment does not require that inmates receive frequent showers.  DiFilippo v. Vaughn, No. 95-909, 1996 WL 355336, at *5 (E.D. Pa. Jan. 24, 1996).  An extended delay in receipt of a shower, while seemingly harsh, does not give rise to a constitutional deprivation.  See, e.g., Barndt v. Wenerowicz, No. 15-2729, 2016 WL 6612441, at

---

[11]      Plaintiff actually brings these claims under the Fourteenth Amendment.  As he was confined at the time, however, the proper constitutional provision is the Eighth Amendment.

*1 (E.D. Pa. Nov. 8, 2016) (denial of shower for twenty-eight days not a constitutional violation); Briggs v. Heidlebaugh, No. 96-3884, 1997 WL 318081, at *2 (E.D. May 21, 1997) (denial of shower for two weeks not a constitutional violation); Tinsley v. Vaughn, No. 90-0113, 1991 WL 95323, at *4 (E.D. Pa. May 29, 1991) (suspension of shower privileges for twelve days does not violate the Eighth Amendment).

According to plaintiff's amended complaint, defendants denied him a shower for a maximum of four days. While such a situation may not be entirely pleasant, particularly if plaintiff had soiled himself in some fashion, I cannot find that defendants' actions violated the Eighth Amendment. Therefore, I will dismiss this claim with prejudice.

### 4.    Deliberate Indifference to Medical Need

Plaintiff's list of alleged Eighth Amendment violations includes two claims of deliberate indifference to medical need or interference with medical treatment. As set forth above, the Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Id. at 104. "A medical need is 'serious,' in satisfaction of the second prong of the Estelle test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quotations omitted). Deliberate indifference occurs where prison guards intentionally deny or delay an inmate's access to medical care or intentionally interfere with the treatment once prescribed. See United

States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n.3 (3d Cir. 1979), citing Estelle, 429 U.S. at 104–05.

Plaintiff first sets forth a claim against CO Klinger and Cpl. White for deliberate indifference to plaintiff's medical need after he was injured.  Am. Compl. ¶¶ 48–49.  Following the alleged excessive force by Whitesell, Moore and Garcia on January 4, 2015, plaintiff requested medical treatment.  CO Klinger "not only told [him] to 'shut up and rest [his] neck' but call[ed] more officers to 'come get [him].'"  Compl. Mem., p. 5, lines 15–17.  A group of COs came to his cell, including Cpl. White, and "[a]fter [a] delay," plaintiff was taken to medical and treated.  Id. at p. 5, lines 17–23.  Such a claim does not rise to the level of a constitutional violation.  Even assuming that plaintiff had a serious medical need that required medical attention, plaintiff admits that he was taken to the medical unit that day, was treated and given an x-ray.  Id. at p. 5, lines 19–23.  Plaintiff's disagreement with the type of care he received while in the medical unit does not suggest that the prison guards who brought him there on the same day his injuries occurred were deliberately indifferent to his need for medical care.  Accordingly, defendants' motion to dismiss this claim is granted.

Plaintiff's second claim alleges that Lt. Mastnjak interfered with plaintiff's medical treatment on January 9, 2015.  Am. Compl. ¶ 64.  On January 9, 2015, plaintiff passed out with a fever and profuse sweating and was hyperventilating.  When medical said he might need to be sent to the hospital, Lt. Mastnjak and others stated that he might still have injuries from an incident with the COs on January 4, 2015.  Compl. Mem., p. 6, lines 19–22.  Nurse Lisa asked if he was in pain from the incident and when he said "yes," "they" put him in a room without further attention for some time.  Id. at p. 6, lines 23–28.  He ended up staying in the medical unit for treatment until January 11, 2015.  Id. at p. 6, line 25–p. 7, line 10.

Such allegations allow no reasonable inference that Lt. Mastnjak interfered with or was deliberately indifferent to plaintiff's medical needs. "'[A] non-medical prison official' cannot 'be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference' when the 'prisoner is under the care of medical experts' and the official does not have 'a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" Pearson v. Prison Health Serv., ___ F.3d ___, 2017 WL 892371, at *11 (3d Cir. Mar. 7, 2017), quoting Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Indeed, plaintiff specifically alleges that he was already in the care of medical officials, meaning that Mastnjak did not deny or delay his access to medical treatment. Therefore, I will dismiss this claim.

### 5.     Other "Conditions of Confinement" Claims

Finally, plaintiff's amended complaint sets forth a litany of other "conditions of confinement" claims that do not lend themselves to any broad categorization. Because the Eighth Amendment does not mandate that prisons be free of discomfort, Farmer, 511 U.S. at 832, a plaintiff setting forth an Eighth Amendment claim must show that he has been deprived of "the minimal civilized measure of life's necessities." Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997), quoting Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992). This includes showing that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. Farmer, 511 U.S. at 834. "In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the 'totality of the circumstances' as critical to a finding of cruel and inhumane treatment." Caldwell v. Luzerne County Corr. Facility Mgmt. Emps., 732 F. Supp. 2d 458, 470–71 (M.D. Pa. 2010),

citing Rhodes v. Chapman, 452 U.S. 337, 362–63 (1981).  As explained by the United States

Supreme Court:

> *Some* conditions of confinement may establish an Eighth
> Amendment violation "in combination" when each would not do
> so alone, but only when they have a mutually enforcing effect that
> produces the deprivation of a single, identifiable human need such
> as food, warmth, or exercise—for example, a low cell temperature
> at night combined with a failure to issue blankets . . . . To say that
> some prison conditions may interact in this fashion is a far cry
> from saying that all prison conditions are a seamless web for
> Eighth Amendment purposes.  Nothing so amorphous as "overall
> conditions" can rise to the level of cruel and unusual punishment
> when no specific deprivation of single human need exists.

Wilson v. Seiter, 501 U.S. 294, 304–05 (1991) (internal citations omitted) (emphasis in original);

see also Tillery v. Owens, 907 F.2d 418, 427 (3d Cir. 1990) (elaborating on factors to be

considered, including "food, medical care, sanitation, control of vermin, lighting, heating,

ventilation, noise level, bedding, furniture, education and rehabilitation programs, safety and

security and staffing"), citing Peterkin v. Jeffes, 855 F.2d 1021, 1025–26 & n.7 (3d Cir. 1988).

Plaintiff's claims are as follows:

- A claim against CO Riggens for the involuntary administration of medication to plaintiff.  Am. Compl. ¶¶ 14, 16.  On December 26, 2014, after plaintiff repeatedly requested hygiene from CO Riggens, Riggens waived a needle "tauntingly" in front of plaintiff.  A unit came, took plaintiff out of his cell, stripped him and involuntarily shot him with a needle of medication before giving him a smock.  Compl. Mem., p. 1 line 26–p. 2, line 3.

- A claim against CO Riggens and others for the involuntary strip set forth above.  Am. Compl. ¶ 17.

- A claim against CO Daniels for abuse of his position in fabricating plaintiff's efforts to harm himself.  Id. ¶ 31.  Daniels allegedly claimed that plaintiff was banging his head on the window, which he later admitted was not true.  This allegation resulted in the cell extraction unit being called to forcefully put plaintiff in a restraint chair.  Compl. Mem., p. 3, line 24–p. 4, line 3.

- A claim against Mr. Francis for not doing anything about repeated complaints regarding the food being served by the kitchen.  Am. Compl. ¶ 99.  Even after Mr.

Francis was notified about the problems and promised that the food would get better, the next set of trays that came to J-Block were all under-portioned and cold.  Compl. Mem., p. 9, lines 7–11.

- A claim against CO Haines for leaving the hot water running in the closet, depriving inmates of hot water or pressure for the showers on March 11, 2015. Am. Compl. ¶ 100; Compl. Mem., p. 9, lines 14–17.

- A claim against Cpl. Garcia for serving plaintiff's food to another inmate on April 16, 2015.  Am. Compl. ¶ 107.  Specifically, on April 16, 2015, Garcia gave plaintiff's bowl of salad to inmate Flamet and stated "f**k him" when Flamet said it was plaintiff's.  Compl. Mem., p. 10, lines 9–10.

- A claim against Sgt. English and Lt. Forbes for ordering plaintiff to be on cuff order absent any disciplinary misconduct by plaintiff.  Am. Compl. ¶¶ 109–110. On April 26, 2015, plaintiff was informed by CO Little and Sgt. Young that he was on cuff order once again per Lt. Forbes.  This order was seemingly in response to an incident on April 24, 2015 where Sgt. English came down during searches, at which time he and plaintiff had a discussion over "untying sheets and [plaintiff] said it was an exaggeration to which [English] got upset and said, "I don't have to do nothing to you, I'll get others to f**k you up."  Compl. Mem., p. 10, lines 12–17.

- A claim against Cpl. Whitesell for harassing plaintiff and poking holes in his drinking cup during searches on May 31, 2015.  Id. ¶ 115; Compl. Mem., p. 11, lines 11–12.

- A claim against CO Daniels or harassing plaintiff and others by giving CO Boyd cleaning supplies for inmates that were insufficient for cleaning their rooms.  Am. Compl. ¶ 131.  On July 19, 2015, CO Boyd was doing cleanup.  When plaintiff asked for a broom, Boyd said "[you] ain't getting one" and that was what Daniels gave him.  Plaintiff said they were supposed to get one and Boyd got upset with him while Daniels was smirking.  Compl. Mem., p. 13, lines 15–17.

- A claim against Sgt. Mueller for making plaintiff and others be cuffed backwards without incident and knowing that officers were intentionally slamming people into walls.  Am. Compl. ¶ 132.  After an incident with inmate Scott on July 20, 2015, Sgt. Mueller made all inmates put their hands behind their backs to be cuffed.  After that, two other inmates were slammed against the wall after they were cuffed.  Compl. Mem., p. 13, lines 18–22.

- A claim against Mr. Francis for not ensuring proper food servings.  Am. Compl. ¶ 140.

- A claim against CO Little for denying plaintiff utensils for eating after plaintiff pointed out his unfairly denying another inmate yard time.  Id. ¶ 143; Compl. Mem., p. 16, lines 14–18.

None of these claims—considered either individually or collectively—rise to the level of an Eighth Amendment violation.  With respect to the involuntary medication claims, the involuntary strip, the involuntary restraint and the cuffing and cuff order claims, Am. Compl. ¶¶ 14, 16, 17, 31, 109–10, 132, plaintiff does not allege that he suffered any serious pain or injury resulting from these events.  "The Eighth Amendment does not protect an inmate against an objectively de minimis use of force."  Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009); see, e.g. Wilson v. Brown, 261 F. App'x 442, 444 (3d Cir. 2008) (locking plaintiff in cell with handcuffs on does not rise to Eighth Amendment violation); Washington v. Grace, 445 F. App'x 611, 616 (3d Cir. 2011) (holding that various minor altercations do not rise to the level of severity required to violate the Eighth Amendment).  With respect to plaintiff's claims about food temperature, food portions and a one-time serving of plaintiff's food to another inmate, Am. Compl. ¶¶ 99, 107, 140, "[t]he purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation;" only a "substantial deprivation" of food to a prisoner sets forth a viable Eighth Amendment claim.  Lindsey, 327 F. App'x at 321; see also Grace, 445 F. App'x at 616 ("[T]he occasional denial of a 'full meal' . . . do[es] not suffice to state an Eighth Amendment violation.").  Plaintiff's claim that he and other inmates were not given enough cleaning supplies to clean their rooms, Am. Compl. ¶ 131, is similarly insufficient to state a constitutional violation.  Glazewski v. Corzine, 385 F. App'x 83, 89 (3d Cir. 2010) ("[Prisoner's] complaint that he was not given sufficient cleaning supplies is insufficient to state a constitutional violation.").  Finally, the one-time denial of eating utensils or and poking of holes in plaintiff's drinking cup, Am. Compl. ¶¶ 115, 143, do not result in a denial of any necessity and, therefore, does not rise to the level of an Eighth Amendment violation.  See

<u>Pepper v. Carroll</u>, 423 F. Supp. 2d 442, 448–49 (D. Del. 2006) (denial of reading material, exercise, television, cleaning tools, boiling water, ice, razors and writing utensils while voluntarily in security housing unit does not constitute a denial of necessities and, therefore, is not a serious deprivation under the Eighth Amendment).

In short, plaintiff has documented problems that he finds both upsetting and uncomfortable, but they do not satisfy the objective element of an Eighth Amendment claim. Rather, plaintiff's allegations merely equate to unpleasant incidents of prison life that do not rise to the level of a constitutional violation.  Therefore, I will dismiss all of these claims.

### E.      Procedural Due Process

Plaintiff brings a procedural due process claim against two defendants in connection with their alleged failure to properly adhere to Pennsylvania's internal procedures for handling citations and grievances.  Specifically, he contends that Lt. Ham failed to given him twenty-four hour written notice of an incident report, Am. Compl. ¶ 34; failed to provide him with a fact-finding guilty statement on January 2, 2015, <u>id.</u> ¶ 35; had plaintiff removed from a hearing on January 5, 2015 without cause, despite plaintiff's right to be present, <u>id.</u> ¶ 50; and did not provide plaintiff with a guilt-finding statement for the January 5, 2015 hearings.  <u>Id.</u> ¶ 52.  He also claims that Warden McFadden is liable for not having a disciplinary process adhering to plaintiff's rights.[12] <u>Id.</u> ¶ 36.

"[S]tate procedures, in themselves, do not confer a liberty interest protected by the due process clause."  <u>Thomas v. Rosemeyer</u>, 199 F. App'x 195, 198 (3d Cir. 2006).  Thus, a prisoner's claim that a prison failed to comply with its own or with state procedures during a disciplinary hearing does not give rise to procedural due process concerns.  <u>Ayers v. Campbell</u>,

---

[12]      Plaintiff suggests he was entitled to the procedural due process protections given to pre-trial detainees, but offers no allegation that he was a pre-trial detainee rather than a convicted prisoner.

267 F. App'x 176, 177 (3d Cir. 2008).  Accordingly, plaintiff's procedural due process claims

related to his disciplinary hearings must be dismissed.

### F.      Failure to Provide Grievance Forms

Plaintiff sets forth multiple claims against numerous defendants for failure to provide

grievance forms or implement the established grievance procedure.  Specifically, plaintiff asserts

claims against the following defendants:

- Warden McFadden for not implementing a known accessible grievance procedure.  Am. Compl. ¶ 56.

- Capt. Taylor, Cpt. Griswold, Cpt. Saunders, Cpt. Furina and Cpt. Miller for not providing a grievance form to report excessive force.  Id. ¶¶ 57–61.

- Cpl. White and Sgt. English for denying plaintiff the right to redress the January 23, 2015 violation of his rights.  Id. ¶¶ 70, 72.

- Lt. Brooks and Major Graham for not providing plaintiff with a grievance form to report excessive force used by officers on January 4, 2015.  Id. ¶¶ 73–74.

- Capt. Griswold, Capt. Taylor and Mr. Healy for not providing plaintiff with a grievance form for medical issues on February 1, 2015.  Id. ¶¶ 75–77.

- Cpl. Svah by discouraging plaintiff from filing a grievance.  Id. ¶ 78.

- Mr. Healy for not providing a grievance form .  Id. ¶ 81.

- Lt. Ham, Lt. Brooks, Lt. Mastnjak, Capt. Griswold, Capt. Miller, Capt. Furina, Capt. Taylor and Capt. Saunders for not providing a grievance form to report the February 19, 2015 incident.  Id. ¶¶ 88–95.

- Sgt. English for not providing plaintiff grievance forms for grievable incidents on February 23, 2015.  Id. ¶ 97.

- Cpl. White for denying plaintiff a grievance form for grievable issues on February 10, 2015.  Id. ¶ 98.

- Sgt. English for not providing plaintiff with a grievance form to report Haines's actions on March 11, 2015.  Id. ¶ 101.

- Lt. Forbes, Capt. Furina, Capt. Taylor, Major Graham and Warden McFadden for denying plaintiff a grievance form requested on or around April 26, 2015.  Id. ¶ 112.

- Capt. Taylor for not allowing plaintiff the right to file a grievance in regards to him being on cuff order on June 1, 2015.  Id. ¶ 117.

- Mr. Healy for not responding to plaintiff's repeated request for grievance forms on or around June 10, 2015.  Id. ¶ 119.

- Mr. Healy for not giving plaintiff the grievance form requested to report civil violations on or around June 19, 2015.  Id. ¶ 122.

- Capt. Taylor for denying plaintiff his right to redress with grievance forms.  Id. ¶ 128.

- Warden McFadden for not responding to plaintiff's appeal filed July 11, 2015.  Id. ¶ 129.

- Cpl. White for "twisting plaintiff's word on July 23, 2015 in request of the grievance form as he had done since plaintiff's first request."  Id. ¶ 133.

- Sgt. English for denying plaintiff his right to a grievance form to report Powers's actions on August 15, 2015.  Id. ¶ 135.

- Mr. Francis for not providing plaintiff with a grievance form after repeated incidents with the food servings or temperatures on September 21, 2015.  Id. ¶ 136.

- Warden McFadden for the conduct of the grievance procedure which is inadequate to serve inmates' rights to report violations of rights.  Id. ¶ 144.

"[T]he failure of a prison official to process a grievance does not violate a constitutional right because there is no constitutional right to an effective prison grievance procedure."  Bucano v. Monroe Cnty. Corr. Facility, No. 13-1782, 2014 WL 509396, at *5 (M.D. Pa. Jan. 7, 2014), citing Burnside v. Moser, 138 F. App'x 414, 415–16 (3d Cir. 2005) (failure of prison officials to process administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation); see also Dickens v. Taylor, 464 F. Supp. 2d 341, 353 (D. Del. 2006) ("Plaintiff cannot maintain constitutional claims based on an inadequate grievances system, that grievances were denied, that he was not provided a hearing upon the filing of a grievance, or that his grievances were not addressed.").  While the absence of an effective grievance process may excuse the administrative exhaustion requirement under the

Prison Litigation Reform Act, it cannot, in and of itself, give rise to a constitutional claim. Bucano, 2014 WL 509396, at *5; see also Platt v. Brockenborough, 476 F. Supp. 2d 467, 470 (E.D. Pa. 2007) ("A prisoner who does not receive a response to his grievance may file suit in federal court.  As a result, the prison's failure to respond does not infringe on the prisoner's access to the courts.")

All of plaintiff's grievance-related claims allege that he was not provided a grievance form or that the grievance process was generally inadequate.  Therefore, I grant defendants' motion to dismiss these claims.

### G. First Amendment and First Amendment Retaliation Claims

Plaintiff maintains two claims under the First Amendment:  one against CO Haines for disclosure of legal information and one against Cpl. Svah and CO Little for retaliation.  Neither claim states a plausible cause of action

First, plaintiff brings a single claim against CO Haines for improperly disclosing plaintiff's legal information to other inmates.  Am. Compl. ¶ 68.  Specifically, after plaintiff returned from court on January 6, 2015, he was told by other inmates that Haines was discussing his legal information out loud to the block.  Compl. Mem., p. 7, line 13–15.  This claim does not set forth an actionable constitutional violation.

A plaintiff may state a First Amendment claim against Defendants who read his legal materials if he alleges that there was a pattern or practice of opening and reading his legal materials outside of his presence.  See Schreane v. Holt, 482 F. App'x 674, 676–77 (3d Cir. 2012), citing Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006)); see also Thompson v. Hayman, No. 09-1833, 2011 WL 2652185, at *5 (D.N.J. July 6, 2011).  Where, however, plaintiff alleges neither actual injury nor that a pattern and practice of defendants reading his legal materials,

49

plaintiff fails to state a First Amendment claim.  See Nixon v. Secretary Pa. Dept. of Corr., 501 F. App'x 176, 178 (3d Cir. 2012) (holding that a single, isolated incident where a prisoner's mail was confiscated and destroyed did not state a claim for violation of the First Amendment); Hale v. Pa. Dept. of Corr., No. 07-0345, 2010 WL 3791833, at *3 (M.D. Pa. Sept. 16, 2010) ("Isolated incidents of opening legal mail outside of an inmate's presence, without any evidence of improper motive, is nothing more than an assertion of negligence and is insufficient to establish a constitutional violation."); Drake v. Muniak, No. 13-3868, 2015 WL 2169875, at *5 (D.N.J. May 7, 2015) (holding that an allegation that plaintiff's legal materials were read and confiscated one time does not state First Amendment claim).  Accordingly, plaintiff's allegation that CO Haines, on a single occasion, discussed plaintiff's legal papers and affairs with other inmates fails to state a claim upon which relief may be granted.

Also under the guise of the First Amendment, plaintiff alleges that Cpl. Svah and CO Little retaliated against him for filing a grievance.  Am. Compl. ¶¶ 84–86.  In order to establish an illegal retaliation claim for engaging in protected conduct, a prisoner must prove that (1) his conduct was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected activity was a substantial or motivating factor in the decision to discipline him.  Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016).  It is undisputed that a prisoner's filing of a grievance satisfies the first prong of "protected conduct." Id.  In order for an action to qualify as "adverse" under the second prong, it must be "sufficiently serious 'to deter a person of ordinary firmness from exercising his constitutional rights.'" Walker v. Mathis, 665 F. App'x 140, 143 (3d Cir. 2016), quoting Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  A single temporary inconvenience does not qualify as adverse.  See Walker, 665 F. App'x at 143 (temporary removal from work privilege and two days of prison

wages not adverse action); <u>Brightwell v. Lehman</u>, 637 F.3d 187, 194 (3d Cir. 2011) (charging

prisoner with misconduct that was later dismissed not an adverse action); <u>Verbanik v. Harlow</u>,

512 F. App'x 120, 122–23 (3d Cir. 2013) (transfer to a less desirous cell and being locked up in

the shower for two hours on one occasion not adverse act.)

In this case, plaintiff alleges that, on February 19, 2015, after he submitted his grievance,

Cpl. Svah and CO Little entered his cell telling him that he was "not getting any more law

library" and "F**k grievance.  [He] can ask, but ain't getting sh*t."  Compl. Mem., p. 8, lines

24–26.  While his submission of the grievance constituted protected activity, nothing in his

allegations suggest any adverse action.  Indeed, plaintiff does not contend that Svah and Little

actually followed through on any threats to deny him further law library access.  Because mere

comments are not sufficiently serious to deter a person of ordinary firmness from exercising his

constitutional rights, I must dismiss these claims.

### H.    Sixth Amendment Access to Courts

Plaintiff also alleges that he was denied access to the law library and legal materials.

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts."

<u>Monroe v. Beard</u>, 536 F.3d 198, 205 (3d Cir. 2008), <u>citing</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 350–1

(1996).  "Access to the prison law library is not a 'freestanding' right, however, and a prisoner

challenging the denial of access must allege some actual injury to have standing to assert a claim

on this basis." <u>Platt v. Brockenborough</u>, 476 F. Supp. 2d 467, 470 (E.D. Pa. 2007); <u>see also</u>

<u>Tinsley v. Gioria</u>, 369 F. App'x 378, 381 (3d Cir. 2010) ("[A] prisoner making an access-to-

courts claim is required to show that the denial of access caused actual injury.").  As defined by

our Court of Appeals, "[w]here prisoners assert that defendants' actions have inhibited their

opportunity to present a past legal claim, they must show (1) that they suffered an 'actual

51

injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and

(2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other

than in the present denial of access suit." Monroe, 536 F.3d at 205.

Plaintiff's amended complaint sets forth the following Sixth Amendment claims:

- A claim against Capt. Taylor and counselor Vasquez for denial of access on February 10, 2015. Am. Compl. ¶¶ 79–80. Specifically, plaintiff received a note on a sent request slip from Capt. Taylor regarding law library use by which he was given books from the law library on assigned days. Compl. Mem., p. 8, lines 13–15. Plaintiff, however, was not able to use the computers or copy cases, resulting in counselor Vasquez charging him $40. Id. at p. 8, lines 17–18. In addition, when requesting to make legal calls, Vasquez said he had to find an "escort" for him. Id. at p. 8, lines 18–19.

- A claim against Sgt. Young, Sgt. Lynch and Capt. Saunders for denying plaintiff law library access when they had the authority to permit him access. Am. Compl. ¶¶ 123–24. After repeated law library requests to Sgt. Young and Sgt. Lynch, Lynch said he sent an e-mail to Capt. Saunders, but his request was denied. Compl. Mem., p. 12, lines 18–19.

- A claim against counselor Vasquez for again charging plaintiff for case law from the law library on June 28, 2015. Am. Compl. ¶ 125; Compl. Mem., p. 12, lines 20–21.

- A claim against CO Powers for harassing plaintiff by denying him access to the law library when plaintiff properly requested access and did nothing wrong. Am. Compl. ¶ 130. Plaintiff believes Powers denied him access to the law library because plaintiff had filed a grievance. Compl. Mem., p. 13, lines 12–14.

- A claim against counselor Vasquez for not providing plaintiff with legal envelopes on July 8, 2015. Am. Compl. ¶ 137. Another claim against counselor Vasquez for denying plaintiff a legal cell ordered by the court on August 10, 2015. Id. ¶ 138. Plaintiff contends that Vasquez has charged and/or denied material for "legal stuff" multiple times, including envelopes and calls to his lawyer for court purposes. Compl. Mem., p. 14, lines 15-18.

Nothing within these allegations allows an inference that plaintiff suffered an "actual

legal injury." Although plaintiff claims to have been improperly charged for materials or

suffered some understandable frustration in accessing materials,[13] he does not assert that he lost

---

[13]     Plaintiff asserts that the illegibility of his original complaint resulted from defendants' refusal to provide plaintiff with proper supplies. Pl.'s Resp. Opp'n Mot. to Dismiss, ECF No.

any opportunity to pursue any of his underlying claims.  Quite to the contrary, plaintiff has

managed to file the present case setting forth more than 150 claims against the defendants.

Absent some legal injury, these Sixth Amendment claims must be dismissed.

## I.    Equal Protection Claims

Defendants next seek to dismiss plaintiff's equal protection claims.  As explained

previously, "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no

State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike."  City of

Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985), citing Plyler v. Doe, 457 U.S. 202,

216 (1982).  Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that

he is a member of a protected class and was treated differently from similarly situated inmates.

Graf v. Lanigan, No. 14-2613, 2016 WL 324946, at *3 (D.N.J. Jan. 27, 2016), citing Cleburne,

473 U.S. at 439. Where the plaintiff does not claim membership in a protected class, he must

state facts showing that: "(1) the defendant treated him differently from others similarly situated,

(2) the defendant did so intentionally, and (3) there was no rational basis for the difference in

treatment."  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006); see also Holland v.

Taylor, 604 F. Supp. 2d 692, 702 (D. Del. 2009) ("Courts have consistently held that, in the

absence of a fundamental right or a protected class, equal protection only requires that a

regulation which results in unequal treatment of an inmate bear some rational relationship to a

legitimate penological interest."), citing McGinnis v. Royster, 410 U.S. 263 (1973); Hodges v.

Klein, 562 F.2d 276 (3d Cir. 1977).

_____

98, at 7.  Plaintiff has suffered no actual legal injury, however, because he was given leave to
amend his complaint and has managed to file a legible document.

With regard to discretionary decisions in prison, courts in the Third Circuit have noted that it is improbable that prisoners would be similarly situated to one another for equal protection purposes, under any circumstances. See Wilson v. Sobina, No. 11-028, 2012 WL 6840521, at *4 (W.D. Pa. July 16, 2012), report and recommendation adopted, No. 11-298, 2013 WL 140525 (W.D. Pa. Jan. 11, 2013); Grejda v. Longley, No. 11-184, 2012 WL 2861733, *14 (W.D. Pa. Jun. 20, 2012); Johnson v. Paparozzi, 219 F. Supp. 2d 635, 644 (D.N.J. 2002); Bagwell v. Brewington-Carr, No. 97-321, 2000 WL 1728148, at *19 (D. Del. Apr. 27, 2000), aff'd, 33 F. App'x 647 (3d Cir. 2002); Watkins v. Horn, No. 96-4129, 1997 WL 566080 at *4 (E.D. Pa. Sept. 5, 1997); Adams v. McAllister, 798 F. Supp. 242, 246 (M.D. Pa.), aff'd, 972 F.2d 1330 (3d Cir. 1992); Rowe v. Cuyler, 534 F. Supp. 297, 301 (E.D. Pa. 1982), aff'd, 696 F.2d 985 (3d Cir. 1982).

Plaintiff, in this case, sets forth several equal protection claims:

- A claim against CO Riggens for denying plaintiff hygiene, but allowing it for others. Am. Compl. ¶ 12.  Plaintiff explains that, in December 2014, he noticed other people taking showers, but he and others were not given one.  Even though he repeatedly requested one from CO Riggens, Riggens ignored his request.  Compl. Mem., p. 1, lines 24–26.

- A claim against Sgt. English for not allowing plaintiff to file a grievance when other inmates were allowed to do so.  Am. Compl. ¶ 102.  Specifically, in March 2015, plaintiff asked Sgt. English for a grievance against CO Haines for purposely leaving hot water running.  Two other inmates, Aguilar and Voros, requested and submitted grievances, but plaintiff's request was denied.  Compl. Mem., p. 9, lines 15–19.

- A claim against Lt. Brooks for giving another inmate a grievance form, but denying plaintiff a grievance form on April 17, 2015.  Am. Compl. ¶ 105.  Plaintiff explains that Brooks offered another inmate a grievance form to report an incident of violence with CO Bemberry, but when plaintiff wanted a grievance to report cold conditions, it was denied. Compl. Mem., p. 10, lines 1–6.

- A claim against Lt. Forbes for giving other inmates grievances, but denying plaintiff's request on June 1, 2015 for a grievance to report his having to wear cuffs during exercise. Compl. Mem., p. 11, lines 12–13.

- A claim against Lt. Ham, Capt. Taylor and Warden McFadden for treating plaintiff differently than similarly-situated inmates in disciplinary actions. Am. Compl. ¶ 121. Plaintiff seems to assert that he was "cuff ordered" for threatening officers when another inmate, Debellis, was not "cuff ordered" when he "allegedly threatened" an officer named Townsend. Compl. Mem., p. 12, lines 5–6. He also notes that other inmates (Saunders, Lopez) received lighter disciplinary punishment for their actions. Id. at p. 12, lines 9–13.

- A claim against Lt. Forbes for giving other inmates grievances, but denying plaintiff's request on June 1, 2015 for a grievance to report his having to wear cuffs during exercise. Id. at p. 11, lines 12–13.

Although, for some of his claims, plaintiff identifies other inmates who received different or more favorable treatment, he fails to allege sufficient facts to permit an inference that they were similarly-situated. Indeed, the decisions at issue—the denial of hygiene and the denial of grievance forms—are precisely the type of discretionary decisions for which the ability to show similarly-situated inmates is highly "improbable." Mere identification of other prisoners who received showers or grievance forms in the same time frame that plaintiff was denied similar treatment does not plausibly state a claim that these prisoners were similarly-situated for purposes of an equal protection violation. Accordingly, I will dismiss these claims as well.

### J.     Supervisory Responsibility Claims

Plaintiff also sets forth three supervisory liability claims related to the conditions of confinement in the prison. I will dismiss these claims with prejudice.

As previously explained, it is well established that supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691 (1978). Purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her supervisory responsibilities. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. Therefore, a plaintiff may set

forth a claim for supervisory liability under § 1983 if he "(1) identif[ies] the specific supervisory

practice or procedure that the supervisor failed to employ, and show[s] that (2) the existing

custom and practice without the identified, absent custom or procedure created an unreasonable

risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4)

the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the

supervisor's failure to employ that supervisory practice or procedure." Brown v. Muhlenberg

Twp., 269 F.3d 205, 216 (3d Cir. 2001), citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.

1989). It is not enough for a plaintiff to argue that the alleged injury would not have occurred if

the supervisor had "done more." Id. He must identify specific acts or omissions of the

supervisor that evidence deliberate indifference and establish a link between the act or omission

and the ultimate injury. Id.

      Notably, participation in the after-the-fact review of a grievance is not enough to

establish personal involvement. Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006)

(allegations that prison officials and administrators responded inappropriately to inmate's later-

filed grievances do not establish the involvement of those officials and administrators in the

underlying deprivation); see also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D.

Pa. Dec. 19, 2007); Ramos v. Pa. Dept. of Corr., No. 06-1444, 2006 WL 2129148, at *2 (M.D.

Pa. July 27, 2006). Thus, the filing of a grievance is not sufficient to show that the recipient had

the actual knowledge necessary for personal involvement. Rode v. Dellarciprete, 845 F.2d 1195,

1208 (3d Cir. 188).

      The claims of supervisory liability in the amended complaint are as follows:

- A claim against Capt. Griswold and Major Graham for allowing inmates to be in a harsh, cold environment and for not addressing inmates' needs, such as blankets. Am. Compl. ¶ 103. Plaintiff explains that, for a week and a half in early March 2015, the heat was off

and plaintiff personally wrote to Capt. Griswold, Major Graham and a Dr. Davis.  One inmate even requested medical for the cold conditions.  Compl. Mem., p. 9, lines 21–25.

- A claim against Warden McFadden for "the conditions of J-block against pretrial detainees and the length of confinement allowed."  Am. Compl. ¶ 139.

- A claim against Warden McFadden for conditions permitted in the RHU which are so harsh that inmates frequently go to medical for suicide watch.  Am. Compl. ¶ 147.

Such allegations are clearly insufficient to state a claim under the Eighth Amendment.  As an initial matter, general allegations of "harsh" conditions without identification of those conditions do not set forth any plausible claim for relief.  More importantly, plaintiff has failed to identify specific acts or omissions of the supervisors that allow an inference of deliberate indifference and establish a link between the act or omission and the ultimate injury.  Instead, plaintiff simply argues that the supervisors should have "done more" or responded positively to his grievances, claims which fail to establish supervisory liability.  See, e.g., Compl. Mem., p. 9, lines 21–25.  Absent factual allegations allowing an inference of deliberate indifference on the part of these defendants, I must dismiss these claims.

### K.      Section 1985 and 1986 Claims

The final set of claims in the amended complaint involves allegations under 42 U.S.C. §§ 1985 and 1986, as follows:

- A claim against Detective Balchunis, Detective Grandizio and Detective Ken Beam for delaying plaintiff's medical treatment.  Am. Compl. § 1985 claims, ¶ 1.

- A claim against CO Riggens and Nurse Cotton for agreeing upon behavior that violated plaintiff's rights to be free from involuntary medication.  Id. § 1985 claims, ¶ 2.

- A claim against the Chester County Prison Administration who have two weekly meetings for allowing and permitting plaintiff's due process rights to be violated and put on cuff order which in turn affected his security level.  Id. § 1985 claims, ¶ 3.)

- A claim against the CEU team and medical staff on December 28, 2014 for further denying plaintiff hygiene supplies/shower after plaintiff defecated on himself.  Id. § 1985 claims, ¶ 4.

- A claim against Cpl. Whitesell, CO Moore and Cpl. Garcia for the physical force unnecessarily used on plaintiff on January 4, 2015.  Id. § 1985 claims, ¶ 6.

- A claim against CO Little and Cpl. Svah for their acts of harassment towards plaintiff on February 19, 2015 by denying him law library access and making remarks on denial of grievances.  Id. § 1985 claims, ¶ 7.

- A claim against Sgt. English and Lt. Forbes for initiating the due process violation of putting plaintiff on cuff order without cause.  Id. § 1985 claims, ¶ 8.

- A claim against Sgt. English, Cpl. White and Capt. Taylor for repeatedly denying plaintiff grievance having knowledge and understanding of such denial.  Id. § 1985 claims, ¶ 9.

- A claim against Cpl. Marconi and CO Daniels for their behavior on December 28, 2014 in denying plaintiff a basic human need and causing a "CEU [cell extraction unit] event" absent any relevant cause.  Id. § 1985 claims, ¶ 10.

- A claim against Capt. Furina, Capt. Taylor, Major Graham and Warden McFadden for collectively having knowledge of plaintiffs due process being violated and not providing a grievance.  Id. § 1985 claims, ¶ 11.

- A claim under § 1986 against all the above defendants because they had the authority to protect plaintiff from a violation of his rights, but did not.  Id. § 1986 claim, ¶ 1.

As set forth previously, to maintain a § 1985 cause of action, a plaintiff must establish: (1) a conspiracy by the defendants; (2) that the conspiracy was designed to deprive plaintiff of the equal protection of the laws or equal privileges and immunities; (3) the commission of an overt act in furtherance of that conspiracy; (4) a resultant injury to person or property or a deprivation of any right or privilege of citizens; and (5) that defendants' actions were motivated by a racial or otherwise class-based invidiously discriminatory animus.  Litz v. Allentown, 896 F. Supp. 1401, 1414 (E.D. Pa. 1995).  Specific allegations of an agreement to carry out the alleged chain of events are essential in stating a claim for conspiracy.  Spencer v. Steinman, 968

F. Supp. 1011, 1020 (E.D. Pa. 1997).  "It is not enough that the end result of the parties'

independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted

in conscious parallelism."  Id.  Finally, the element of class-based animus is essential to a proper

§ 1985 claim.  Robison v. Canterbury Village, Inc., 848 F.2d 424, 430 (3d Cir. 1988).

Plaintiffs § 1985 claims fail to state a cognizable claim on multiple grounds.  Primarily,

for all but the claims of excessive force, Am. Compl. § 1985, ¶ 6, plaintiff does not set forth any

constitutional violations that were the object of the alleged conspiracies.  Moreover, plaintiff

alleges no facts from which I can infer an agreement among the various defendants to commit

the alleged constitutional violations; rather, his claims rest on the mere facts that the defendants

acted in parallel.  Finally, plaintiff has not pled that any of these actions were motivated by a

class-based animus.  Therefore, I will dismiss all of these claims with prejudice.  In turn, because

§ 1986 claims are derived from § 1985 claims, the § 1986 must likewise be dismissed.  Koorn v.

Lacey Twp., 78 F. App'x 199, 208 (3d Cir. 2003)  Hilton v. Whitman, No. 04-6420, 2008 WL

5272190, at *11–12 (D.N.J. Dec. 16, 2008).

## CONCLUSION

Plaintiff's amended complaint clearly reflects his dissatisfaction with his prison

conditions and treatment.  Unfortunately for plaintiff, however, "the Constitution does not

mandate comfortable prisons" and prisons "which house persons convicted of serious crimes,

cannot be free of discomfort."  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  I recognize that

plaintiff has a constitutional entitlement to be free from excessive force and, to the extent he has

pled such claims or related failure to protect claims, I will not dismiss his amended complaint.

The remainder of his claims, however, simply do not allege conditions or treatment that rise to

the level of constitutional violations.  While I remain cognizant that pro se prisoners are accorded

a great deal of latitude in pleading and generally must be given leave to amend, plaintiff has already been afforded that opportunity following explicit instructions from the court.  As any further grant of leave to amend would be both futile in light of plaintiff's previous efforts and inequitable given defendants' repeated efforts to move to dismiss on the merits of the claims, I will dismiss with prejudice all but the excessive force claims and the related failure to protect claims.

An appropriate Order follows.